### MILLER v. NORTHWESTERN MUT. LIFE INS. CO. OF MILWAUKEE, WIS.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1901.)

#### No. 397.

LIFE INSURANCE—CREATION OF CONTRACT—AUTHORITY OF LOCAL AGENT.

An application for life insurance was made and delivered to a local agent, containing a clause that no statement or representation made by or to the agent should be binding on the company unless reduced to writing and approved by its officers at its home office, in another state. The applicant gave his check for the amount of the first premium to the agent on the statement of the latter that if he did so the insurance would be in effect from that date, but that the company would have to approve the application. The application and check were forwarded to the state agent, who retained the check and sent the application to the company, which wrote for further information in certain particulars. In reply the applicant wrote directly to the company, giving such information, and stating that if not satisfactory it should consider the application withdrawn and return his check. The company rejected the application, and so advised the state agent, who wrote the local agent, notifying him of the fact, and returning the payment received. On the day such letter

111 F.—30

was written the applicant died, but neither the company nor the state agent had any notice of his sickness until after his death. The executor refused to accept repayment of the money, and sued to recover the amount of the insurance. *Held*, that no contract of insurance was made; that the local agent had no authority, either actual or apparent, to make the same, even if he had attempted to do so, and the applicant evidently understood such fact, as shown by his letter asking the company to consider his application "withdrawn" if his statement was not satisfactory, and was not misled so as to create any estoppel against the company.

In Error to the Circuit Court of the United States for the Western District of Virginia.

In June, 1898, the defendant, a life insurance company created by and organized under the laws of the state of Wisconsin, with its home office at Milwaukee, was doing business in the state of Virginia; T. A. Cary at Richmond, Va., being its state agent, and Wm. H. John its local agent at Coeburn, in said state. On the 7th day of June, 1898, Hobart Miller, the plaintiff's testator, who lived at Coeburn, made application through John, the local agent, for a $5,000 policy under the 20-year endowment plan of said company. The application consisted of three parts, numbered 1, 2, and 3. Part 1 of the application was signed by Miller, and was dated at Coeburn on the 7th day of June, 1898. This part contained a clause to the effect that no statements, representations, or information made or given by or to the agent taking the application for the policy, or to any other person, should be binding on the company, or in any manner affect its right, unless such statements, representations, or information were reduced to writing and presented to and approved by the officials of the company at the home office. It was further stipulated in the said part that all the statements and answers written in the application, including those thereafter to be made to the medical examiner, were warranted to be true, and to be full and fair answers to the questions offered to the company as a consideration for the contract for insurance, and, further, that the contract should not take effect until the first premium was paid during the life of the person proposed for insurance, and while he was in good health. On the 13th of June, 1898, Miller executed parts 2 and 3 of the application, by submitting to a medical examination, which was required by the rules of the company under the terms of the application. On the 14th of June, 1898, Miller paid to John, the local agent, by his check of that date, $241.20, and took the following receipt:

"Received of Hobart Miller $241.20, as first annual premium on policy for $5,000 with Northwestern Mutual.

　"[Signed]　　　　　　　　　　　　　　　　　Wm. H. John."

The following was John's testimony, and the only evidence on the trial, relative to what occurred between him and the applicant in connection with the payment of the premium: "I could not be positive, but I know the conversation occurred between Mr. Miller and myself either on a prior occasion or at that time [meaning when the receipt was given], and it was something like this: When I asked him if he wanted to accompany the application with a payment, he asked what would be the difference, and I told him if the check accompanied the application the insurance would be in effect from that date; and before I could say anything he said, 'Of course, the company must accept the application.' I said the company would have to approve it, and he said, 'Yes.' " On the date the check was given, John forwarded the application, consisting of the three parts, with applicant's check for the premium, to Cary, the state agent at Richmond. It reached Cary on June 16, 1898. Cary, finding that the application was in some respects inaccurately made out, returned it on the same day that he received it to John for correction; and it came back to Cary corrected, and was received by him on the 20th of June, 1898, and he mailed it the same day to the home office

of the company, at Milwaukee, where it was received June 22, 1898, in due course of mail. The check, however, Cary retained, and placed to his own credit in a Richmond bank.

Miller, in his medical examination, when asked as to the use of intoxicating beverages, made a statement showing that he drank both whisky and beer, and sometimes in more than moderate quantities, but stated further that he had used neither whisky nor beer to the extent of intoxication during the past 10 years. On the 24th of June, 1898, the medical director of the company at Milwaukee wrote Cary, the agent at Richmond, calling his attention to the answers of the applicant relative to the use of intoxicants, and asking for additional information on that subject. This letter was received by the Richmond agent on the 27th of June, 1898, and on the same day he communicated its contents to John, the local agent at Coeburn, in a letter of that date. John informed Miller, and the latter wrote a letter on July 1st from Coeburn, addressed directly to the company, which is as follows:

"Northwestern Mutual Life Insurance Company, Milwaukee, Wis.—Gentlemen: Your Mr. W. H. John, of this place, has shown me your letter to him of the 27th of June, and has asked me to write you, covering the ground outlined by it. Dr. Wolfe and I both thought the questions propounded upon the application blank had been fully answered, but I will try again. It is impossible to make a statement showing just what I drink a day, for sometimes I take nothing for several days, and then, again, if I am with friends I drink more freely than ordinarily. I very rarely drink beer in winter, and in summer I very rarely drink both beer and whisky upon the same day. Occasionally I do so, but very occasionally. My drinking depends greatly upon circumstances, and varies greatly. I drink half a pint of whisky a day occasionally only,—say once in two weeks. I hope this statement will be satisfactory. If it is not, please return me the check forwarded to you, and consider my application as withdrawn. I have already, without any fault of my own, been out of my money since June 14th, and I do not care to let the matter drag any longer. Truly yours,

"[Signed]                                        Hobart Miller."

This letter was transmitted by John to Cary, the state agent at Richmond, and was received by the latter on the 5th day of July, 1898, and was immediately on the same date transmitted to the home office of the company at Milwaukee, where it was received on the evening of July 7, 1898. On July 9th the application of Miller, together with his letter of July 1st, was finally considered by the medical department of the company, and the application unconditionally rejected on account of the habits of the applicant. The agent at Richmond was advised of this action by letter from the home office of the company dated July 9, 1898, which was received by him on July 11th; and on the same day the agent at Richmond sent notice of the rejection of the application to John, the local agent at Coeburn, Va., inclosing with the notification a check to the order of Hobart Miller, the applicant, for the $241.20 which had been previously paid as premium. On the 11th of July, 1898, the applicant died from sickness, and when the letter of notification that the application for insurance had been rejected and the check reached John, at Coeburn, the applicant was dead, and there was no one to whom the check could be paid. The defendant had no notice of applicant's sickness at the time the application was rejected; nor was the agent at Richmond informed of his sickness and death when the notice was received by him and forwarded to John, the agent at Coeburn. The applicant, Hobart Miller, left a last will and testament, which was duly admitted to probate in the county of Wise, in the state of Virginia, and the present plaintiff, E. Spencer Miller, was duly qualified as executor thereof. As soon as the plaintiff qualified as executor, John tendered him the $241.20 premium which had been paid by his testator, but the plaintiff declined to accept it, and the same was deposited by the agent to the plaintiff's credit in a national bank in Philadelphia, where it still remains. This suit was then brought by the executor in the circuit court of Wise county, in the state of Virginia, and removed by the petition of defendant to the circuit court of the United States for the Western district of Virginia, on the ground of diverse citizenship. The plaintiff's action is

trespass on the case in assumpsit, and he claims damages in the sum of $5,000, and interest from the 11th day of July, 1898. The circuit court, in the trial, after hearing the evidence, directed a verdict for the defendant, and it was so returned by the jury, to which the plaintiff excepted, and sued out his writ of error, by which the case is brought here for review.

Daniel Trigg, for plaintiff in error.

William H. White, for defendant in error.

Before GOFF, Circuit Judge, and MORRIS and BOYD, District Judges.

BOYD, District Judge (after stating the facts). The application consisting of the three parts put in course of preparation on the 7th of June, with John's receipt for the first premium, given June 14th, and forwarded together on the last-named date to the state agent at Richmond, constituted the initial step of the parties in this transaction. This was the proposal of Miller, the applicant, for a policy of insurance upon his life in the defendant's company, and, according to the terms of the application, the right was reserved to the company to accept or reject the proposition; for it is set forth in express terms that the statements and representations made either to or by the agent taking the application should not be binding on the company, or in any way affect its right, unless reduced to writing and approved by the company at its home office, which was in Milwaukee, Wis. Certainly, so far there was no obligation resting on the company, for the application had not yet reached the place for approval. There was no unreasonable delay on the part of the company's agents, under the circumstances, in forwarding the application to the home office; for when Cary received it at Richmond, on the 16th of June, two days after it was sent from Coeburn, he discovered inaccuracies and returned it for correction. The corrections were made, the application sent to him, he mailed it at once, and it was received at the home office in Milwaukee on June 22d. After an examination the company, through its chief medical officer, by letter dated June 24th, called for further information in regard to applicant's use of intoxicating liquors. The state agent at Richmond received the letter asking this information on June 27th, and at once communicated its contents to John, the agent at Coeburn. John called upon the applicant, and the latter answered the inquiry by his letter of July 1st. In this letter the applicant reiterates, in substance, the answers he had given to questions upon the same subject in the application, and goes further and admits in his letter that his application is only pending the action of the company, and asks, if his explanation is not satisfactory, that the company will return his check and consider the application withdrawn. We think the court may take judicial notice of the way in which contracts for insurance are usually regulated. Abb. Tr. Ev. (2d Ed.) p. 590, par. 5. There is nothing here to support the theory that John was invested by this company with any power or authority beyond that usually confided to local life insurance agents; that is, to explain the character of their principal's business and operations, and to solicit and forward applications or proposals for policies, accom-

panied by the statements of applicants and the necessary medical examinations. It is true that John stated to the applicant at the time of the payment of the premium, or about that time, that if the premium was paid the insurance would take effect from that time; but he then and there qualified this statement by saying that the company would have to approve it, to which the applicant assented. It is thus shown that applicant understood fully at the time the premium was paid to John and the application forwarded that there · was no contract, and that the application must be passed upon and approved by the company at its home office before it became binding upon the latter. If there was any uncertainty as to how the applicant regarded the situation when he paid the premium, he himself has set the matter at rest by his letter of July 1st, in which he gives additional explanation as to his use of intoxicants, and, after expressing the hope that his statement would be satisfactory, says, if it is not, to return his check and consider his application withdrawn. Here the applicant in unmistakable terms admits that there was no contract; that the matter was still in fieri, and dependent upon the action of the company for its completion. The acceptance by the company of the applicant's proposal was essential to the creation of a contract of insurance. Insurance Co. v. Young, 23 Wall. 85, 23 L. Ed. 152; Insurance Co. v. Ewing, 92 U. S. 377, 23 L. Ed. 610; Giddings v. Insurance Co., 102 U. S. 108, 26 L. Ed. 92.

Under the circumstances, we do not deem it necessary to discuss at length the power of the agent to bind his principal. It is well settled that he can only do so when acting within the scope of his agency. An oral contract of insurance, in order to be valid, must be definite as to time, rate of premium, etc., and the evidence adduced to establish such contract must justify the inference that the same was completed. Was there any completed contract in this case? The plaintiff in error relies on the statement of John, the local agent, that the insurance would take effect from the payment of the premium. This action of John, taken alone, is not sufficient to bind his principal; for neither the fact nor the scope of agency can be proved by the agent's acts, representations, declarations, or admissions. The agency must first be established, and either a specific authority, or one of so general a nature as to give him authority to do the act in question, or a subsequent ratification with full knowledge, or a holding out to the world, must be proved. It is a settled principle that:

"Third parties dealing with an agent are put upon their guard by the very fact, and do so at their own risk. They cannot rely upon the agent's assumption of authority, but are to be regarded as dealing with the power before them, and must, at their peril, observe that the act done by the agent is legally identical with the act authorized by the power. Especially is this the case with one dealing with an agent whose authority he knows to be special. And it is the duty of all having transactions with an agent in his representative capacity to inquire into the extent of his authority." 1 Am. & Eng. Enc. Law, p. 987, and cases cited in note.

The whole course of the transaction under consideration, in our opinion, supports the conclusion that the applicant fully understood John's position,—that he was merely the instrument of negotiation,

and that no contract of insurance was effected until the application was approved by the company at its home office, and the policy issued. The conversation between John and the applicant with reference to the payment of the premium bears out this conclusion; for, although John told applicant that the insurance would take effect from the time of the payment of the premium, he qualified this statement by saying that the company would have to approve the application, to which the applicant assented. The receipt given by John does not sustain the contention that the payment of premium at that time bound the company. The receipt does not in itself contain any terms which can be construed into a contract to insure. On the other hand, it expressly recites that the money paid by the applicant to John was paid as the first annual premium on policy for $5,000 with the Northwestern Mutual. No policy was in existence when the receipt was given, because none had been issued. The application which accompanied the premium was applicant's proposal for insurance, subject to the approval of the company; the approval to be in the form of a policy, which, when issued, became the evidence of the company's obligation. It was the first premium upon this policy, when issued, that the applicant was paying, and we are unable to find any other conclusion consistent with reason and intelligent business dealing.

The judgment of the circuit court is affirmed.