Argued December 8, 1964, reversed and remanded
March 24, 1965

# MORGAN *v.* STATE FARM LIFE INSURANCE
# COMPANY

400 P. 2d 223

*James H. Clarke,* Portland, argued the cause for appellant. With him on the brief were Koerner, Young, McColloch & Dezendorf, Portland, and Robert H. Grant and Kelly & Grant, Medford.

*Thomas Garrison,* Roseburg, argued the cause for respondent. With him on the brief were Kelley & Garrison, Roseburg.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Lusk, Justices.

GOODWIN, J.

This is an action at law to recover benefits under an alleged contract of insurance on the life of plaintiff's deceased husband. Defendant appeals from a judgment on a verdict for plaintiff.

Plaintiff bases her claim on the terms of an instrument entitled "CONDITIONAL BINDING RECEIPT." The face of this instrument reads as follows:

"RECEIVED FROM  Rudy Lee Morgan
(Amount of cash
settlement received) $  37.65  in connection with
the initial premium on the proposed insurance for

which an application is this day made to the State
Farm Life Insurance Company ON THE LIFE OF

(Name of Pro-
posed Insured)   Rudy Lee Morgan   and wife and
named children, if a Family Life Policy is being
applied for.

"Life Insurance and any additional benefits in
the amount applied for (but not exceeding a maxi-
mum liability of $50,000, including all additional
benefits, on all pending applications to the company
combined) shall be deemed to take effect as of the
date of this receipt, subject to the terms and condi-
tions printed on the reverse side hereof.

"The amount of settlement received shall be
refunded if the application is declined or if a policy
is issued other than as applied for and is not ac-
cepted. Any check, draft or money order is received
subject to collection.

"   11/21/61              [Signed]   Leonard H. Kress
Date of Receipt             Signature of Agent"

The reverse side of the instrument contains the
following provisions:

"Subject to the limitations of this receipt and
the terms and conditions of the policy that may be
issued by the company on the basis of the applica-
tion, the Life Insurance and any additional bene-
fits applied for shall not be deemed to take effect
unless: (1) the company, after investigation and
such medical examination, if any, as it may require,
shall be satisfied that on the date of this receipt
each person proposed for insurance was insurable
for the *amount* of Life Insurance and any addi-
tional benefits applied for according to the com-
pany's rules and practice of selection; and (2) the
application is accepted and approved by the com-
pany at its Home Office or at one of its Regional
Offices; EXCEPT THAT, if the application is not
for a Family Life Policy, the approval by the com-

pany of the insurability of the Proposed Insured for a plan of insurance other than that applied for, or the denial of any particular additional benefit applied for, shall not invalidate the terms and conditions of this receipt relating to Life Insurance and any other additional benefit applied for * * *."

The trial court held that the receipt created a contract of temporary insurance as a matter of law. The court found an inconsistency between the conditions on the reverse side of the receipt (the conditions of insurability and company approval) and the language on the face of the receipt providing that "Life Insurance * * * shall be deemed to take effect as of the date of this receipt * * *." It was the trial judge's theory that the applicant was insured until the application was rejected and notice of such rejection was given to the applicant during his lifetime. He submitted to the jury only the question of whether defendant had rejected the application and had notified the applicant of the rejection prior to his death.

Shortly after the receipt was issued, the company questioned the insurability of the applicant and requested that he be examined by a physician. The applicant failed to keep an appointment which had been made for him by the agent, and died without having complied with the company's request for a physical examination.

■ Although the language in the conditional binding receipt may be confusing, and may even have been intended to be confusing, there is no ambiguity in the receipt, as ambiguity is usually understood in the law. Consequently, there is nothing for this court to construe.

■ Admittedly there have been cases in which a theory of constructive ambiguity has been employed in

the absence of any ambiguity. See *Ransom v. Penn Mutual Life Ins. Co.,* 43 Cal2d 420, 274 P2d 633 (1954); *Binding Receipts in California,* 7 Stan L Rev 292 (1955). Nevertheless, we are unable to decide the case at bar on the basis of a fiction which we deem inapplicable. The literal meaning of the receipt in this case is that the insurer engaged to insure the insured, if he turned out to be insurable, and, in that event, the insurance would be in effect from the date of the application. Such contracts have not yet been declared to be illegal in this state. Accordingly, this is the contract the parties made, and we are not at liberty to create a new contract for the parties. *Headley v. United Fid. Hosp. Assur.,* 235 Or 302, 384 P2d 1007 (1963).

■ The case should be returned to the trial court for a factual determination upon the issue of insurability. If the decedent was, in fact, insurable on the date the receipt was signed, then the company would have been under a duty to issue the policy upon the meeting of certain reasonable requirements by the insured.

■ If, as may have happened in this case, death intervened before the insured could meet all the requirements of the insurer, then the company would be bound by the receipt upon proof that the deceased was insurable when he made his application. These factual matters, however, were not decided by the jury because the trial court ruled, as a matter of law, that there was a contract of insurance in force on the day of the application, subject to a condition subsequent in the event of after-discovered uninsurability.

The defendant's eighth assignment of error (with reference to the instructions on insurability) was well taken, and the case should have been submitted to the

jury on the theory that the contract was the one set forth in the receipt.

Reversed and remanded.

O'CONNELL, J., dissenting.

The liability of the insurer under the so-called binding insurance receipt has been the subject of much litigation and a considerable amount of comment by legal writers. It is generally recognized that the cases are in confusion and difficult, if not impossible, to classify.[1] Efforts have been made to distinguish the various kinds of receipts, particularly as to whether they provide for coverage from the date of the receipt by relation back if applicant is insurable, or by relation back from the date the insurer approves the application.[2]

It appears from the cases, however, that the courts are not so much concerned with the distinction in the language of the receipts as it reflects differences in the bargain between the parties, but rather with the deceptive character of the language in the receipts leading the average applicant to believe that he is insured until his application is rejected.[3]

In the present case it is possible to reconcile the provisions on the face of the receipt with the exceptions on the reverse side of the receipt. When the entire receipt is carefully read there is no ambiguity in the sense that the instrument is subject to two possible interpretations. However, the receipt is couched in language which is likely to lead the average appli-

---

[1] Life Insurance Receipts: The Mystery of the Non-Binding Binder, 63 Yale L J 523 (1954).

[2] Ibid., at pp 527-28; Anno., 2 ALR2d 943, § 9 (1948).

[3] It has been suggested that it is not the language of the receipt which is deceptive but that "it is the concept of 'retroactive immediate coverage' * * *." "Binding Receipts" in California, 7 Stan L Rev 292, 300 (1955).

cant to believe that he has immediate coverage subject to rejection upon notification. Others have made the same observation:

> "The terms may have some meaning to a judge schooled in the fine print of insurance clauses. But it is rather doubtful if the average applicant will realize that the finder's apparent promise of immediate coverage does not mean what it says. * * * In view of the applicant's natural belief that he is covered, refusal of recovery turns the binding receipt into an instrument of deception. While the company demands premiums from the date of application, it grants coverage only from the date of approval."[4]

It is further suggested by the writer that "the use of the words 'binding receipt' appears calculated to induce in the applicant an expectation of immediate coverage."[5]

Defendant argues that the receipt signed by the applicant "provides immediate coverage if the company shall be satisfied that the applicant was insurable when it was issued" and "consequently it provides protection against uninsurability or loss of life occurring after it is issued and gives value to the applicant in exchange for the conditional deposit of his money." A similar argument was made in *Gaunt v. John Hancock Mutual Life Insurance Co.*, 160 F2d

---

[4] Life Insurance Receipts: The Mystery of the Non-Binding Binder, 63 Yale L J 523, 533-34 (1954). The author further observes that "If an applicant should question the effect of the binder, the agent may tell him that he is protected 'from now on.' * * * Statements of this nature appear repeatedly in the litigated cases," (citing Maddox v. Life & Casualty Co. of Tennessee, 79 Ga App 164, 53 SE2d 235, 237 (1949); Himes v. Metropolitan Life Ins. Co., 207 S C 40, 36 SE2d 137, 138 (1945)).

[5] *Ibid.*, citing Cheek v. Pilot Life Ins. Co., 215 N C 36, 1 SE2d 115, 116 (1939).

599 (2d Cir 1947).© The court, speaking through Judge Learned Hand, said:

"* * * An underwriter might so understand the phrase, when read in its context, but the application was not to be submitted to underwriters; it was to go to persons utterly unacquainted with the niceties of life insurance, who would read it colloquially. It is the understanding of such persons that counts, and not one in a hundred would suppose that he would be covered, not 'as of the date of completion of Part B,' as the defendant promised, but only as of the date of approval. Had that been what the defendant meant, certainly it was easy to say so; and had it in addition meant to make the policy retroactive for some purposes, certainly it was easy to say that too. To demand that persons wholly unfamiliar with insurance shall spell all this out in the very teeth of the language used, is unpardonable." (160 F2d at 601).

The court went on to say that

"* * * A man must indeed read what he signs, and he is charged, if he does not; but insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion. We can think of few situations where that canon is more appropriate than in such a case as this." (160 F2d at 602).

I would concur, therefore, in the result reached by the trial court. I would do so not on the theory

---

© In the *Gaunt* case six possible advantages to the insured were listed by the defendant insurer:

"* * * (1) The policy would sooner become incontestable. (2) It would earlier reach maturity, with a corresponding acceleration of dividends and cash surrender. (3) It would cover the period after 'approval' and before 'issue.' (4) If the insured became uninsurable between 'completion' and 'approval' it would still cover the risk. (5) If the insured's birthday was between 'completion' and 'approval,' the premium would be computed at a lower rate. (6) When the policy covers disability, the coverage dates from 'completion.' "

that the receipt is susceptible to two possible legal meanings, and is construed in favor of the insured, but rather on the ground that the langage of the receipt is confusing and deceptive and that defendant "must bear the burden of any resulting confusion."[7] This burden is predicated upon the assumption frequently recognized that the average person would regard the conditional binding receipt as providing immediate coverage subject to subsequent rejection by the insurer.[8] I recognize that this result impinges in some measure upon the traditional concept of freedom of contract. But, as has been pointed out elsewhere, insurance contracts are contracts of adhesion in which the applicant does not have equality of bargaining power as in ordinary contracts.[9] Under such circumstances courts are entitled to provide some measure of protection to those who have no real opportunity to bargain. At least the insurer should not,

---

[7] Plaintiff relies upon Ransom v. The Penn Mutual Life Ins. Co., 43 Cal2d 420, 274 P2d 633 (1954), which involved a binding receipt not unlike that presently under consideration. Insofar as the California court rested its decision upon a finding of ambiguity in the contract, I would reject its reasoning.

[8] E. g., Francis v. Mutual Life Ins. Co., 55 Or 280, 106 P 323 (1910); Gaunt v. John Hancock Mut. Life Ins. Co., 160 F2d 599, 602 (2d Cir 1947).

[9] "* * * One assumption of freedom of contract is relative equality of bargaining power. And another is workable competition among sellers, enabling buyers to shop around for the most favorable terms. In the binder situation, however, the applicant has no equality or bargaining power with the insurance company. Neither can he adequately compare the contents of various insurance policies. Since the basic assumptions underlying the traditional unwillingness of courts to police contracts are absent, an approach which provides protection of the applicant is essential." Life Insurance Receipts: The Mystery of the Non-Binding Binder, 63 Yale L J 523, 535 (1954). See also: Kessler, Contracts of Adhesion—Some Thoughts About Freedom of Contract, 43 Colum L Rev 629 (1943); Life Insurance Binding Receipts, 33 Ill L Rev 180 (1938); Patterson, The Delivery of a Life-Insurance Policy, 33 Harv L Rev 198 (1919).

under the claim of freedom of contract, be permitted to bargain with instruments of confusion although technically adequate to meet the requirements of precision recognized in ordinary contracts entered into by parties with equal bargaining power.

I would hold that the trial court properly ruled as a matter of law that the conditional binding receipt provided insurance coverage for the applicant. I would further hold that the trial court was correct in holding that the coverage continued until the insurer gave the applicant notice of rejection.[10]

SLOAN and DENECKE, JJ., join in this dissent.

---

[10] Colorado Life Co. v. Teague, 117 SW2d 849, 856 (Tex Civ App 1938); Mohrstadt v. Mutual Life Ins. Co. of New York, 114 F 81, 84 (8th Cir 1902) (dictum). Cf., Reck v. Prudential Ins. Co., 116 NJL 444, 184 A 777, 778 (1936). *Contra*, Leube v. Prudential Ins. Co. of America, 147 Oh St 450, 72 NE2d 76 (1947).