Kathryn S. WRIGHT

v.

PILOT LIFE INSURANCE COM-
PANY, Inc.

Civ. A. No. 65–C–68–R.

United States District Court
W. D. Virginia,
Roanoke Division.

Sept. 14, 1966.

Dale W. LaRue, Galax, Va., for plaintiff.

Philip M. Sadler, Gilmer, Sadler, Ingram, Thomas & Sutherland, Pulaski, Va., for defendant.

DALTON, Chief Judge.

In this action plaintiff claims to be the beneficiary and entitled to the proceeds of an alleged contract of life insurance between her late husband, Clinton Shasta Wright, and the defendant, Pilot Life Insurance Company (hereinafter referred to as "Pilot"). This action was originally brought in the Circuit Court of Carroll County, Virginia, but subsequently was removed to this court. By an order entered October 20, 1965, plaintiff was granted leave to file an amended bill of complaint.

The depositions of Mr. W. Delbert Turner, the agent who handled Mr. Wright's policy application, Mr. Douglas D. Moody, a fellow employee of Mr. Wright, and Dr. Henry Frank Starr, Jr., Pilot's medical director, have been introduced into evidence, and portions thereof will be referred to in this opinion.

Clinton Shasta Wright was employed as a driver for Northeastern Trucking Company, Inc., the home office of which is located in Charlotte, North Carolina. Northeastern's owner had agreed to make salary deductions for any of its employees who might wish to acquire insurance from Pilot, and Mr. Turner, as an agent of the defendant, was given the opportunity of talking with each employee about this prospect. Any policies issued under this arrangement, however, were to be individual policies rather than "group insurance" (Northeastern already had a group insurance policy from Pyramid Life Insurance Company which covered all of its employees). Deposition of Turner, pp. 19, 34.

Pursuant to the arrangement described, Mr. Turner contacted Mr. Wright and on October 29, 1964, took an application for insurance on his life in Northeastern's office at Charlotte. The application was for insurance in the amount of ten thousand dollars ($10,000) with a provision for double indemnity in the case of accidental death. Deposition of Turner, p. 4.

At the time the application was taken Mr. Wright paid to Mr. Turner the sum of twenty-three dollars and eighty cents ($23.80) as settlement for the first monthly premium, and was issued a "Conditional Receipt" which provided:

Date October 29, 1964. Received from Clinton S. Wright (the Applicant) the sum of $23.80 Dollars as settlement for the first Monthly SS premium on a policy of life insurance for $10,000 Dollars, on the life of Clinton S. Wright (Proposed Insured) for which application has been this day made to the PILOT LIFE INSURANCE COMPANY. If the said application is declined by the Company, no policy of insurance will be issued and in such event the said settlement will be promptly returned to the said applicant upon surrender of this receipt. If the application is approved, without restrictions, as applied for, the insurance will be in effect from the date of this application in accordance with its terms and conditions, except that if the amount applied for together with any previous insurance in force with the Company, is more than $150,000, then any amount in excess of $150,000 shall not take effect until the reinsurance of such amount is secured by the Company.

(signed) W. D. Turner, Sr.
Agent

Mr. Turner told Mr. Wright that it was necessary for him to have a physical

examination to complete the application and that after the examination, if the policy were approved by the company, coverage would be effective from the date of completion of the application by reason of his having already tendered the first monthly premium. Deposition of Turner, pp. 6, 7, and 8. Mr. Turner's testimony indicates that he had no discretion to waive the requirement of a physical examination and that such an examination was an absolute condition precedent to the completion of the application. Deposition of Turner, p. 6.

The application was then forwarded to Pilot's home office, but on November 10, 1964, a letter from that office informed Mr. Turner that consideration of Mr. Wright's application was being withheld because he had not yet obtained the necessary physical examination. Deposition of Turner, p. 9. Upon inquiry, Mr. Turner was informed that Mr. Wright would be back in the Charlotte area on November 18, and the agent made an appointment to talk with the proposed insured on that date. At that meeting (again in Northeastern's office), Mr. Turner stressed the importance, in fact, the absolute necessity, of obtaining the examination without delay. Mr. Wright replied that he was going deer hunting and would attend to the matter sometime after the season closed. Deposition of Turner, pp. 10, 11; Deposition of Moody, p. 4.

Wright never obtained the physical examination and on November 28, 1964, he was fatally injured in a highway accident in Fairfield County, Connecticut.

Pilot's tender of the twenty-three dollar initial payment, which had been held in escrow by the company (Deposition of Turner, p. 24), was refused by Mrs. Wright, she claiming to be entitled to the double indemnity proceeds of the policy by virtue of the accidental death of her husband.

In her brief, plaintiff contends that the law of North Carolina should control in this case and the court agrees. All of the significant contacts are in North Carolina, and the only association which Virginia has with the situation is that it is the domicile of the plaintiff.

■ It is axiomatic that an insurance company is under no duty to write insurance for any particular applicant. The insurer is at liberty to choose its own risks; the choice of who to accept and who to reject is a purely voluntary decision for the company. It follows, then, that a mere application does not constitute a contract of insurance. There must be an acceptance by the insurer, and the courts have held to be valid stipulations which recite that the company will incur no liability until approval of the application. Belk's Dep't. Store of New Bern v. George Washington Fire Ins. Co., 208 N.C. 267, 180 S.E. 63 (1935); Sturgill v. New York Life Ins. Co., 195 N.C. 34, 141 S.E. 280 (1928); Turlington v. Metropolitan Life Ins. Co., 193 N.C. 481, 137 S.E. 422 (1927); Appleman, Insurance Law & Practice § 7121 (1943). Mere delay in acting upon the application does not raise a presumption of acceptance nor create a contract. The insurer is entitled to a reasonable time to investigate the risk, and if death occurs during the investigation, the company will not be liable. Ross v. New York Life Ins. Co., 124 N.C. 395, 32 S.E. 733 (1899). See also Hayes v. Durham Life Ins. Co., 198 Va. 670, 96 S.E.2d 109 (1957).

The question we must consider is whether the conditional receipt issued by Pilot to Mr. Wright constituted a contract for temporary insurance which went into effect immediately and protected the decedent during the interim between his filling out of the first part of the application and the final decision by the company.

■■ Mr. Appleman notes that the mere fact that a premium has been paid at the time of application does not establish a contract as of that date, especially if other acts remain to be performed (for example, a medical examination). He further states that a receipt for the advance premium and a provision in the application making life insurance effec-

tive from the date of the application or medical examination does not constitute a contract for temporary insurance where the application provides that the applicant must be found an acceptable risk. Appleman, Insurance Law & Practice § 7121 (1943).

Plaintiff has filed a comprehensive memorandum of authorities in seeking to convince this court that the above proposition is no longer the general rule, and cites first the North Carolina decision of Cheek v. Pilot Life Ins. Co., 215 N.C. 36, 1 S.E.2d 115 (1938). In Cheek, the plaintiff sought to insure the lives of newly born twin babies. A slip labelled "Binding Receipt" (as opposed to "Conditional Receipt" as in this case) was issued by the company, conditioned on approval of the application by the home office. The agent testified that as a part of his "sales pitch" he repeatedly emphasized to the plaintiff an assurance that the insurance went into effect immediately. The baby boy died before investigation by the home office, and the North Carolina Court held that it was necessary for the application to have been approved by the home office and that the binder did not constitute a contract of insurance, even though it was of the opinion that the use of the phrase "Binding Receipt" was misleading and calculated to deceive. The Court cited Gardner v. North State Mut. Life Ins. Co., 163 N.C. 367, 79 S.E. 806, 48 L.R.A., N.S., 714 (1913), for the proposition that the binding slip protected against contingencies which might occur between the date of issuance of the slip and the date of approval of the contract. If the application is not accepted, the opinion states, the binding slip has no effect.

Plaintiff recognizes this holding in Cheek, but seeks to emphasize one particular quotation from the decision wherein the North Carolina Court states:

> In holding that the binding receipt does not of itself constitute a contract of insurance, we do not decide that where a binding slip has been delivered to the applicant the company, in the event of the death or illness of the applicant occurring subsequently, but before the acceptance of the application, may arbitrarily or unreasonably reject or withhold its approval * * *. 1 S.E.2d at 116.

The Court's meaning here seems obvious from the opinion as a whole: if death occurs before any acceptance has been communicated to the applicant, the company cannot thereafter arbitrarily reject an acceptance which it may already have decided to make or withhold an acceptance if the facts show that it most certainly would have approved the application had it not first learned of the death of the proposed insured. The Gardner case, supra, (which also involved a so-called "Binding Receipt") advances this same proposition.

The facts of this case, however, do not warrant the imposition of such a principle to the detriment of Pilot for an obvious reason—here, the defendant cannot be said to have arbitrarily withheld acceptance of the application because the application had not been completed. Since Mr. Wright had failed to obtain a medical examination, the insurer was in no position to render a decision either accepting or rejecting his "application." Further, the evidence shows that Pilot made efforts to persuade the deceased to get the examination, attempting, through its agent, to impress upon him the importance of speedy completion of his application.

The plaintiff places great stress upon Gardner v. North State Mut. Life Ins. Co., supra. Gardner held that if an application for insurance is not accepted, the binding slip is of absolutely no effect. Citing Grier v. Mut. Life Ins. Co., 132 N.C. 542, 44 S.E. 28 (1903), the court said that a binder does not insure of itself, but merely insures against any illness supervening it *if* there is afterwards an acceptance of the application upon which it (the binding slip) depends for its vitality. Again, plaintiff emphasizes a particular paragraph in the

opinion where the Court, quoting from Vance on Insurance, defined a binding slip as a "written memorandum of the most important terms of a preliminary contract of insurance, intended to give temporary protection pending the investigation of the risk by the insurer, or until the issue of a formal policy." 79 S.E. at 808. The use of the term "preliminary contract of insurance" is an unfortunate one, and it is obvious from a reading of the opinion that the Court did not mean to imply that the binder, in and of itself, literally constituted a temporary contract of insurance. Gardner and Cheek are merely saying that if Mr. Wright had obtained a medical examination and the company had approved his then completed application on November 27, it could not thereafter revoke this acceptance upon learning of the insured's death on November 28, since, by the terms of the binder, the policy would have already taken effect as of its date of completion. Both cases stress the point that any efficacy the binding slip may have is dependent upon acceptance of the application by the insurer unless it can be shown that the company arbitrarily or unreasonably withheld acceptance in an effort to evade its obligation. The applicant will be covered during the interim between the physical examination and approval by the insurer if, and only if, the application is ultimately accepted (and *a fortiori*, if, and only if, there is a physical examination). See State Distrib. Corp. v. Travelers Indem. Co., 224 N.C. 370, 30 S.E. 2d 377 (1944).

Plaintiff directs this court's special attention to the "landmark decision" by Judge Learned Hand of Gaunt v. John Hancock Mut. Life Co., 160 F.2d 599 (2d Cir. 1947). In that case the court found that it was the intention of the parties for insurance coverage to begin as of the date of the completion of "Part B" of the application (the medical examination). On the same day that the application was made, defendant's agent took the proposed insured to a company approved physician who found him insurable and recommended acceptance of the application. Because of certain factors in his background, the company required another examination of the applicant, which examination he likewise passed. Thereafter, the company received notice of the death of the proposed insured and never formally approved the application, although the facts showed that such approval would have been forthcoming had not death intervened. The binder provided that if the applicant were insurable *and* if the company approved the application, he would be covered from the date of the completion of Part B. The company argued that even though the deceased was "insurable," its formal approval was nevertheless required by the terms of the policy. Judge Hand agreed that the policy literally required home office acceptance, but said that the binding slip was misleading in that a layman would think that he was covered from the date of the medical examination if such examination were favorable. He noted that the ordinary applicant who had paid his first premium and *successfully passed his physical* would not "by the remotest chance understand the clause as leaving him uncovered until the insurer at its leisure approved the risk * * *." 160 F.2d at 602.

Manifestly, Gaunt is inapplicable to the case at bar by virtue of the fact that the applicant in that case had successfully passed the required physical examinations and thus completed his application. No technical deception was practiced on Mr. Wright in the instant case— he was made aware of the fact that his application could not be considered until he had taken a physical, but he chose to go deer hunting rather than expeditiously fulfill this requirement. This is not then an example of a complex, technical situation which, in the words of Judge Hand, "an underwriter might * * * understand" but which would be totally baffling to "persons utterly unacquainted with the niceties of life insurance * * *." 160 F.2d at 601.

Counsel for the plaintiff has recently filed a supplemental brief directing the court's attention to several cases not covered in his first memorandum. The first of these is a decision from the Court of Appeals for the Ninth Circuit, Metropolitan Life Ins. Co. v. Grant, 268 F.2d 307 (9th Cir. 1959). In that case the proposed insured had completed "Part A" of the policy and had made an appointment for the physical examination necessary for "Part B." The applicant died, however, before the physical could be taken. The Court noted that it was bound by California law which required a holding that a temporary contract of insurance arose pending approval or disapproval of the policy by the insurer, citing Ransom v. Penn. Mut. Life Ins. Co., 43 Cal.2d 420, 274 P.2d 633 (1954).

In Liberty Nat'l Life Ins. Co. v. Hamilton, 237 F.2d 235 (6th Cir. 1956), the applicant had been issued a "Binding Receipt" and had taken two physical examinations, both of which were satisfactory. He subsequently died before formal acceptance of the policy by the insurer and upon learning of this fact, the company sent a rejection. The Court noted that the evidence showed that there were no further medical tests to be made with reference to "Part B" of the decedent's application, and said that "[a] 'binding receipt' connotes obligation and when supported by consideration suggests a contract." 237 F.2d at 240. The case held that there was a contract for interim insurance between the decedent and the applicant subject only to subsequent rejection by the insurer, if made during the life of the proposed insured. The Hamilton decision cannot be applied to the instant case since there the decedent had completed his application, and the insurer had facts upon which to base an acceptance or rejection of the risk. Whether the Sixth Circuit would have held that a temporary contract existed if no medical examination at all had been taken lies in the realm of pure conjecture. It will also be noted that the Court stressed the fact that "Binding Receipt" had been issued in holding that the insurer was obligated on its policy.

Plaintiff also cites Union Life Ins. Co. v. Rinehart, 229 Ark. 388, 315 S.W.2d 920 (1958). There, according to the Arkansas Court, no medical examination was required for completion of the policy, and the Binding Receipt issued the applicant put the insurance into effect as of the date of that receipt. The receipt went on to provide that if the applicant was not an acceptable risk, the first premium which had been paid in advance would be returned. The proposed insured died before any manifestation of acceptance or rejection by the company, but the premium was not returned. In holding that there was a binding contract of insurance the court said that since the insurer retained the premium it was bound by the terms of the receipt which it had issued the deceased. The facts of the Rinehart case set it apart from the case at bar.

In Simpson v. Prudential Ins. Co., 227 Md. 393, 177 A.2d 417 (1962), the applicant's physical examination was satisfactory except for one detail, which caused the company to request a urine specimen. The proposed insured was killed before such a specimen could be obtained, and the Court held that a temporary contract of insurance was formed when the first premium was paid, noting that the receipt issued to the decedent was ambiguous and as such was to be construed against the insurer.

The applicant in Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 208 A.2d 638 (1956), gave the soliciting agent a check for $576.42 in payment of the first year's premium, and was assured by that agent (and other officials of the company) that coverage immediately attached. The applicant had completed Part B (the physical examination) but died before the insurer formally accepted the application. The company doctor rejected the application upon learning of the death of the proposed insured, giving reasons which were not satisfactory to the New Jersey Court in the light of the surrounding circumstances. The Court held that interim coverage was afforded the deceased.

Another case cited by the plaintiff is Morgan v. State Farm Life Ins. Co., 240 Or. 113, 400 P.2d 223 (Or. 1965). There the proposed insured died before he could take the medical examination, and the Oregon Court held that if the deceased were found to be insurable, on an objective basis, then the insurer would be bound by the receipt issued for payment of the first premium.

The cases of Metropolitan Life v. Grant, Simpson v. Prudential, and Morgan v. State Farm, supra, seem to support the contentions of the plaintiff. However, they are all based upon the law of other jurisdictions, and this court is bound by the law of North Carolina as set out in the Cheek, Gardner, and Grier cases, supra, which is contrary to the decisions advanced by plaintiff.

The other cases cited in the supplemental brief all differ factually from the case at bar, and the court will not speculate upon the outcome of those cases under a different set of facts.

Plaintiff points out in her brief that there are four main types of policy provisions which determine the period of actual protection afforded by "binders," only two of which apply to this case:

(1) cases where a binding receipt is issued conditioned upon approval by the home office; and

(2) cases where a binding receipt is issued conditioned upon the insurability of the applicant at the time of the application or the medical examination. It might be argued that the latter variety of binder is less restrictive than the former, for if it can be proven that the applicant was insurable by company standards, this would be tantamount to approval by the insurer of the application and no formal acceptance would be required. Plaintiff contends that the receipt in this case is ambiguous and it cannot be said with certainty into which category it falls. Even if this court agreed and construed the receipt to be the more lenient "insurable" type, the outcome of this case would remain unchanged, as there is absolutely no way to ascertain whether Mr. Wright would have been insurable by Pilot's standards. A medical examination by a physician approved by Pilot, which would have become a part of the application for insurance, was the only method by which this fact could have been established. The North Carolina decisions do not espouse the "objective standard of insurability" theory under which a jury would determine whether or not Mr. Wright was insurable at the time of his death. Rather, the final decision of whether to accept a risk is left to the insurer, and such decision is to be made with reference to the individual standards of each particular company.

For the reasons given this court must hold that no contract of insurance was established between Clinton Shasta Wright and the Pilot Life Insurance Company. The North Carolina decisions do not seem unclear on this point, as plaintiff maintains, and so resort to decisions of other jurisdictions will not be necessary. The court realizes that this works a hardship on Mrs. Wright and sympathizes with her situation, but it cannot set up a mechanism whereby an insurer might be judicially compelled to accept a risk which it would not otherwise have insured had it been given an opportunity for a full investigation. The physical examination is one of the most essential elements in an application for a policy of life insurance, and the insurance company has every right to require that one be submitted before the application is ruled upon.

From the evidence presented the court is satisfied that agent Turner made a full and fair explanation to Mr. Wright of the effect and conditions of the conditional receipt.

The Court holds that no contract of insurance ever arose between Clinton Shasta Wright and the defendant, Pilot Life Insurance Company, because Mr. Wright never obtained the required physical examination.

Accordingly it is ADJUDGED and ORDERED that plaintiff's claim be and the same is hereby dismissed with prejudice, and this case is stricken from the docket. Each side shall bear their own costs. The Clerk is directed to send copies hereof to counsel of record.