37134. COASTAL STATES LIFE INSURANCE COMPANY *v.* VICKERS *et al.*

DECIDED MAY 21, 1958.

648

650

*Devereaux F. McClatchey, George B. Haley, Jr., Smith, Kilpatrick, Cody, Rogers & McClatchey, Gibson & Maddox, George E. Maddox,* for plaintiff in error.

*Ewing & Williams, Marshall Ewing,* contra.

FELTON, Chief Judge. 1. It was not error to overrule the general demurrer. The petition alleged that the insured was an insurable risk on the date of the application under the company's rules, limits and standards. The petition does not allege the cause of the insured's death and it could have been possible under the allegations to show that the insured was an acceptable risk, as alleged, the proof of which would have bound the insurance company under the first provision of the receipt. We shall cover the question of whether the application was accepted by the insurance company in a ruling on the motion for a judgment notwithstanding the verdict.

2. The letter from the president of the defendant insurance company to the insured, dated March 20, 1956, was not, under the evidence, an acceptance of the application for insurance. Mr. Charles Van House testified for the insurance company that he was its administrative vice-president and was in the month of March, 1956, and was also vice-president and actuary; that the company used the North American Reassurance Manual for rating and underwriting with reference to medical examinations; that he was familiar with the receipt of the application for insurance by the insured in this case; that the application was received on March 20, 1956, and that the medical examination was received on March 26, 1956; that upon receipt of the medical examination the application was declined by the underwriting committee because of Dr. Jardine's letter which stated that there was a slight coronary insufficiency and according to the manual the company would postpone for one year from time condition is

diagnosed and then consider only with full study as required for coronary occlusion; that the application was denied on March 27th, the day after the insured's death; that the the manual provided as follows: "The description of angina pectoris given above is applicable here with the diagnostic difference being the increased duration of the attack of chest pain in coronary insufficiency. The electro-cardiogram may be entirely normal and changes, if any are present, are minimal." This quotation is opposite the paragraph title, "Coronary insufficiency". He testified further that according to the rules of the company it is a policy of the company to defer further action on such an application when there is proof of coronary insufficiency; that as to the letter written by the president of the insurance company to the insured; at the time the letter was written the application had been received; that the letter was based on the assumption that the policy would be issued; that the letter was sent prior to the receipt of the medical report and the letter transmitted therewith by Dr. Jardine; that it was the general policy of the defendant company to write this form letter upon receipt of all applications for insurance, medical or non-medical; that the purpose of the letter was not to lead an applicant for insurance into believing that a policy would be issued nor to lull the applicant to sleep so he would not go somewhere else and get his insurance; that the purpose of that letter is to thank the man for the application and indicate in effect that the company was glad to have the insured do business with it.

(a) The evidence demanded a finding that the insured was not a reasonable risk on the date of the application under the rules, limits and standards of the company, and the plaintiffs were not entitled to recover the amount sued for under this theory, assuming and we think correctly so, that the contract would obligate the insurance company if the insured had been so insurable. Under the terms of the contract in this case the only question as to this matter was whether the insured was insurable under the rules, limits and standards of the company and not whether as a general proposition the insured was an insurable risk on the date of the application. The only other theory on which the defendant could possibly be liable is that

the letter from the president of the insurance company to the insured, sent before the company received the medical report, constituted an acceptance of the application. We think that the evidence shows conclusively that the letter was not intended as an acceptance of the application. The letter could have been worded with a little more wisdom, but there is no express state-ment in the letter that the application was accepted and the only reasonable interpretation which could be placed on it is that it assumed that the application would be accepted otherwise than by the letter itself. There is no question of estoppel in this case which would debar the insurance company from contending that the letter was not an acceptance for the simple reason that the insured in this case was not seeking insurance but the soliciting agent was the source and cause of the interest of the insured in the application for the insurance here involved nor was there involved the fact that other insurance was allowed to lapse on the prospect of the acceptance of this particular application. In the case of Beaty v. Southland Life Ins. Co., (Texas Civ. App.) 28 S.W. 2d 895, a similar letter was involved which was as fol-lows: "Mr. Aubrey A. Beaty, R. F. D. No. 3, Cameron, Texas. I want to express my personal appreciation of your application for life insurance in this company. That you have made no mistake in the selection of a company in which to insure is evi-dent from the steady and persistent growth that has marked the nineteen years existence of the Southland. The remarkable progress of the Southland Life Insurance Company did not just happen, but is the result of a very definite conviction that no life insurance company could endure or even succeed unless it ren-dered a real service to its policyholders. It is our hope that in the following years we may have the opportunity to render to you the same service on which our present success rests.

"May I point out one incontrovertible fact that applies to any life insurance policy? It is only by carrying that policy to its contemplated maturity that you can secure full benefit of the premiums paid. Be sure that you have chosen the plan and amount that fits your needs and circumstances and then let noth-ing tempt you to lapse or surrender your insurance. If it ever becomes inconvenient for you to pay your premiums, or if you

conclude that the plan you selected is no longer appropriate, I will take it as a favor if you will write me personally. I may be able to be of assistance to you."

The court ruled in that case that it was the custom of the insurance company to send such circular letter to each applicant for insurance. In that case also the president of the insurance company did not pass upon or approve applications but such power was delegated to a "Risks Committee".

In the case of guarantee Fund Life Asso. *v.* Barclay (Texas Civ. App., 1928) 11 S.W. 2d 231, it was held that a notice sent out by mistake advising an applicant that his application had been approved was not binding on the insurance company in the absence of any facts showing an estoppel.

We think the evidence demanded the finding that the insured was not an insurable risk on the date of the application under the rules, limits and standards of the company since the insured died on March 26, 1956, about two weeks after an attack caused by coronary insufficiency of a two-weeks duration and died as a result of coronary occlusion with coronary insufficiency as an antecedent cause, as shown by the death certificate in this case. We think the evidence further demands a finding that the application was not accepted by the company and in the absence of anything showing estoppel the verdict against the insurance company was not authorized. The judgment overruling the demurrers to the petition is affirmed. The judgment overruling the motion for a judgment notwithstanding the verdict is reversed with the direction that the court enter up judgment in accordance with the said motion.

*Judgments affirmed in part and reversed in part. Quillian and Nichols, JJ., concur.*