157 So.2d 19

**UNITED INSURANCE COMPANY OF AMERICA**

**v.**

**Naomi C. HEADRICK.**

**6 Div. 919.**

Supreme Court of Alabama.

Aug. 29, 1963.

Rehearing Denied Oct. 31, 1963.

Jas. L. Shores, Jr., Bibb Allen and London, Yancey, Clark & Allen, Birmingham, for appellant.

Ray Large, Birmingham, for appellee.

HARWOOD, Justice.

In the trial below the cause was submitted to the jury upon counts 1 A and 1 B of the complaint.

Count 1 A claimed of the defendant insurance company damages in that T. R. Headrick, husband of the plaintiff executed a written application for a policy of life insurance, which application was delivered to the defendant. The count further avers that on 25 October 1958, the said T. R. Headrick paid to the defendant company $44.00 as a premium and that the defendant company:

"* * * orally contracted and agreed with said T. R. Headrick to insure the life of said T. R. Headrick in conformance with the terms of said application, and to issue and deliver to T. R. Headrick, within a few days thereafter, the policy of life insurance applied for in said application. That said policy was to issue to the said T. R. Headrick insuring his life upon acceptance of the application and the information thereon by the defendant. That subsequent to the day of to-wit: October 25, 1958 and prior to the death of the said T. R. Headrick on to-wit: Nov. 10, 1958, the defendant did receive and accept said application and the information contained thereon."

The count further avers that under the terms of the policy which the defendant contracted to issue and deliver to said T. R. Headrick, the defendant agreed to insure the life of T. R. Headrick in the sum of $2500, with the plaintiff as beneficiary, upon the death of said T. R. Headrick, upon proof of accidental death of T. R. Headrick. The count further avers that T. R. Headrick died as the result of an accident on 10 November 1958; that the de-fendant breached the contract to insure the life of T. R. Headrick and to issue and deliver to him the policy it had agreed to issue and deliver, in that:

"* * * the defendant accepted the application and the information on the application and actually used that area of the application reserved for home office use only by writing in the area the actual date of issuance of the policy but defendant never delivered said policy to the deceased T. R. Headrick before his death, all to the damage of plaintiff in the sum aforesaid."

Count 1 B claims in code form on a policy issued on 27 October 1958, whereby the defendant insured the life of T. R. Headrick who died on 10 November 1958, of which the defendant has had notice.

In the trial below the plaintiff introduced in evidence an application for insurance signed by T. R. Headrick. The first question and answer on this application reads as follows:

"Do you hereby apply to the UNITED INSURANCE COMPANY OF AMERICA for a policy of insurance to be issued solely and entirely in reliance upon the written answers to the following questions which you adopt as your own and represent to be true, full and complete to the best of your knowledge and information, and do you agree and understand that this application shall not be binding upon the Company until accepted by the Company? Yes."

In addition to the signature of Mr. Headrick, this application also bears the signature of George E. Boyd who is designated as "licensed agent." Pursuant to the application and payment of $44.00 by Mr. Headrick, Mr. Boyd gave to Mr. Headrick a receipt. This receipt was also introduced in evidence by the plaintiff.

At the top of the receipt is the following legend:

**596**

"If acknowledgment is not received within 20 days, write to this office and please be certain to mention this receipt number."

The additional part of the receipt pertinent to this review reads as follows:

"Acceptance of this Receipt by the applicant in exchange for payment made by him shall signify complete understanding and satisfaction with the entire transaction. No representation or agreement not therein embodied shall be binding on either party thereto. In the event the application is rejected the above amount will be refunded by the Company."

The plaintiff also introduced in evidence the answer to interrogatories propounded to the defendant by the plaintiff, and answers by J. M. Penrith, executive vice president of the defendant company. In these answers Mr. Penrith testified that no premium payment was ever accepted, but that $44.00 was received in the form of a check as a deposit toward a premium payment, and that the check was reduced to cash through banking channels and retained in the bank for safekeeping while in a deposit status; that any policy issued by the defendant company would not have been issued in Birmingham, Alabama, and that in due course of business the usual time is from three weeks to one month between the receipt of an application and an initial premium payment in the Birmingham office and the issuance of a policy.

Mr. Penrith further testified soliciting agents of the defendant company are empowered to contact prospective applicants, explain the policy, receive the application and deposit, to be turned into the local office, and give a receipt for such deposit. The soliciting agent also delivers the policy after it has been issued in Chicago and sent to the local office, at which time he again reviews the policy with the insured to ascertain if the insured is satisfied. This was the extent of George E. Boyd's

powers, and soliciting agents, and George E. Boyd in particular, are not empowered to enter into contracts binding the company to insure persons.

Mrs. Headrick, the beneficiary named in the application for insurance, testified that her husband died on 10 November 1958, as a result of an accident while driving a truck.

The jury returned a verdict in favor of the plaintiff and assessed her damages at $2809, and judgment was entered pursuant to the verdict.

The defendant's motion for a new trial being overruled, an appeal was perfected to this court.

All the assignments of error pertain to the refusal of charges affirmative in nature which were directed respectively toward Count 1 A, and Count 2 B of the complaint.

Count 1 A avers a liability on the part of the defendant because of an alleged oral contract between the insured and the defendant to issue a policy within a few days insuring the life of Mr. Headrick "in conformance with the terms of" an application for insurance executed by Mr. Headrick.

Any such contract must be deemed to arise out of the action on the part of Mr. Boyd and Mr. Headrick. The testimony of Mr. Penrith, the executive vice president of the defendant company, introduced by the plaintiff, shows clearly that Mr. Boyd was a soliciting agent for the defendant, and not a general agent with authority to bind the company.

As stated in Liberty National Life Ins. Co. v. Staggs, 242 Ala. 363, 6 So.2d 432:

"We have recognized the general rule that an agent whose authority is limited to soliciting insurance delivering policies and collecting premiums has no power to change stipulations in a contract of insurance: that to do so he must either be a general agent or be specially so authorized

or his course of dealing to that extent have been ratified expressly or impliedly."

This record is devoid of any evidence tending to show that Mr. Boyd's course of dealing was other than that of a soliciting agent.

Thus any oral contract that may have been made between Boyd and Headrick for the issuance of a policy by the defendant was beyond the scope of his agency and not binding on the defendant.

Further, Count 1 A avers that the alleged oral contract for the issuance of a policy by the defendant was made "in conformance with the terms of said application." In the application Mr. Headrick agreed and understood that the application should not be binding upon the defendant until accepted by the company.

As stated in Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175:

"An application for insurance is a mere proposal on the part of the applicant. When the insurer signifies acceptance of it to the 'proposer,' the minds of the parties meet and the contract is made." (Citations omitted.)

"The acceptance must be signified by some act or acts agreed upon by the parties, or from which the law raises the presumption of acceptance." (Citations omitted.)

■ No policy was ever received by Mr. Headrick prior to his death sixteen days after executing the application. Nor is there any evidence that a policy was mailed to Mr. Headrick, or that one had been forwarded to Mr. Boyd, the soliciting agent, in either of which event it would be considered a delivery to the insured. American Nat. Ins. Co. v. Few, 224 Ala. 576, 141 So. 234.

■ Count 1 A does not sound in tort for negligence in processing the application and issuance of any policy, but is based upon a purported oral contract with the defendant. The count does aver that on the application in a space reserved "For Home Office Use Only" there is an actual date indicated of the issuance of the policy. The count does not aver a specific date. This application is before us. A visual examination does not reveal any writing in this area, because of its smudged condition, though a red line is visible. There is no other evidence as to this date, if it were written in. If there were a date and it was after Mr. Headrick's death, the contract would be invalid. See 44 C.J.S. Insurance, § 232.

■ This aside, even had a date been written in this area of the application, we do not see that it could avail the plaintiff below. Particularly apt to the present situation is the following from Munhall v. Travelers' Ins. Co., 300 Pa. 327, 150 A. 645:

"As to the averments that defendant prepared and executed a written policy, and fraudulently refused to issue and deliver it, there is no legal significance in them. As the application was but an offer, the company was free to accept or reject it. The mere execution of the policy is not an acceptance; an acceptance, to be complete, must be communicated to the offeror, either directly, or by some definitive act, such as placing the contract in the mail. The test is not, as appellant seems to think, intention alone."

The plaintiff also introduced into evidence two cards from the defendant's branch office in Birmingham. These cards show that a policy numbered 0395917 was issued by the defendant to a resident of Moulton, Alabama, on 6 November 1958, and another policy numbered 0395919 was issued to a resident of Birmingham on 3 November 1958. The application signed by Mr. Headrick indicates it was for "Policy No. 0395918."

The two cards indicating the issuance of insurance policies on 6 November, and 3 November 1958, do not indicate on what

date the applications for these policies were made, though they do indicate that the policy bearing the higher number and ending in the digits 919, was issued before the policy ending in the digits 917.

In the application signed by Mr. Headrick, he authorized any physician or other person who may have attended him to disclose any information thus acquired. This could only be for investigative purposes.

"As a general rule, and since a contract of insurance rests upon the assent of the parties, an insurance company is not bound to accept an application or proposal for insurance but may reject it for any reason or arbitrarily." 29 Am.Jur., Insurance, Section 202.

 Mere delay of the defendant insurance company, in accepting the offer evidenced by the application, and in returning the cash premium, for which no demand had been made, does not amount to an acceptance of the proposal (application) and convert it into a contract. Alabama Gold Life Ins. Co. v. Mayes, Admr., 61 Ala. 163.

We do not see that the purport of the inferences established by the above mentioned cards can be of any material significance, or shed any light upon the issues of this case, that is, the creation of a valid contract of insurance between the defendant and Mr. Headrick.

The reasons above set forth and the legal principles governing, necessitate the conclusion that the evidence failed entirely to show any contract of insurance between the defendant and Mr. Headrick, and the court erred in refusing the general affirmative charge requested by the defendant as to Count 1 A.

For the reasons set out above, the court likewise erred in refusing the general affirmative charge with hypothesis as to Count 1 B.

This charge as to Count 1 B was also due to be given for the additional reason that Count 1 B declares solely on an insurance policy whereby the defendant insured the life of T. R. Headrick, who died on 10 November 1958, of which the defendant had notice. Even under the plaintiff's evidence it is undisputed that no such policy was ever issued and delivered by the defendant.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.