This is an appeal in a disability insurance case from a summary judgment in favor of one of the defendants and from a directed verdict and judgment in favor of the other defendant.
On September 26, 1973, Thomas E. Powell, plaintiff-appellant, filed his complaint against Republic National Life Insurance Company (hereinafter Republic National) and Max K. Thompson d/b/a Max K. Thompson Insurance Agency (hereinafter Thompson). Count One of the complaint alleged that Republic National and Thompson agreed to insure the appellant to provide him with disability and hospitalization coverage and that the policy proceeds were due and owing. Count Two and Count Three (added April 16, 1975), alleging intentional misrepresentation, were against Thompson only.
On December 7, 1973, Republic National filed a motion for summary judgment on the grounds that no genuine issue of fact existed and defendant was entitled to prevail as a matter of law. The motion was supported by the affidavit of George Monaghan, Assistant Vice President, Underwriting Division, and the exhibits attached thereto. On March 5, 1974, the court granted Republic National's motion for summary judgment. Powell appealed the granting of the motion to this court and the appeal was *Page 1293 
dismissed on the ground that the judgment was not a final judgment in accordance with Rule 54 (b) A.R.C.P. Powell v.Republic National Life Ins. Co., 293 Ala. 101, 300 So.2d 359
(1974).
The case against appellee Thompson was tried on August 27, 1975. At the close of the appellant's evidence, the judge granted a directed verdict as to Count One (contract) in favor of Thompson. Count Two (intentional misrepresentation) was conceded to by appellant. Count Three (intentional misrepresentation) was tried by a jury which failed to reach a verdict and a mistrial was declared. Following the mistrial, the court granted Thompson's motion for a directed verdict and this appeal was perfected by Powell.
At the trial Powell testified as follows:
Powell called Thompson at his office around the latter part of May, 1973, regarding the possible purchase of a disability policy. The following night Thompson came to Powell's house and discussed disability insurance with him. Thompson told Powell that he wrote for several companies but that he thought the best company for Powell was Republic National. Thompson told him that Republic National was "more or less the best," and when asked about the benefits, Thompson said that as far as sickness, there would be a waiting period but if Powell took out the policy he would be automatically covered for an accident. Powell told Thompson he would think about it and get back in touch with him.
On June 18, 1973, Powell went to Thompson's office and told Thompson he had decided to take the policy they had been discussing. Thompson asked Powell the necessary questions, filled out the application, and had Powell sign it. At the same time Powell filled out an automatic payment form whereby the correct amount of the premium would be taken from his checking account each month thereafter and gave Thompson a check in the amount of $20.00.
At the time the application for the disability policy was completed, Powell and Thompson discussed the fact that Powell had an ulcer problem in the past. According to Powell, Thompson said that there might be a rider placed on the policy to exclude sickness related to the ulcer problem but never said anything about the policy not being issued.
Subsequently, on June 26, Powell was accidentally shot in the foot by his brother-in-law with a rifle. He was hospitalized off and on, had his foot amputated and was disabled and unable to work for approximately nine months out of the one year period from June 18, 1973, until June 18, 1974.
Mr. Powell, his wife, and his father testified that Mr. Thompson had assured each of them on several occasions after the accident that Mr. Powell was fully covered and that it would be just a matter of time before he received a check from Republic National.
Thompson took the position at trial that the accidental disability insurance did not commence as soon as Mr. Powell filled out the application. He pointed to the following statement in the application:
 "I understand that if the first full premium is paid with the application and if the application is approved by the Company at its Home Office without modification of the plan of insurance, amount of insurance, or premium, the policy will be effective from the date of the application. If the application is not so approved, the sum collected will be returned, unless a modified policy, effective on the date of issue, is accepted by the appellant."
The trial court consistently ruled that oral testimony would not be admitted to vary this provision of the written application.
Thompson testified in substance as follows:
The application was received in Dallas on June 20 and on June 26 Powell was shot in the foot. During the next two months Thompson made continuing efforts to get the policy issued. On July 2 Republic National sent a request for medical information to Dr. Houghton, who was named in the application as having been the applicant's physician in connection with a prior *Page 1294 
stomach infection. Republic National had not been advised of Powell's accident. On July 22 or 23 Thompson was advised by Republic National that they were still awaiting a report from Dr. Houghton. Thompson called the doctor's office and was assured that the information was being sent. On August 6 Thompson received a letter from Republic National stating that they had not received the attending physician's statement and enclosing a refund check for $20.00 made payable to Powell. Thompson called Dr. Houghton's office again, was again assured that the medical information was on the way, and returned the $20.00 refund check to Republic National with a memo advising that the physician's statement was on the way.
On August 20 Thompson received another letter from Republic National advising that they still had not received the medical statement and again sending a $20.00 refund check. The following day Thompson returned the check to Republic National again and continued his efforts to obtain medical forms from the doctor's office or from the hospital. On September 4 Thompson for the third time received a refund check for Powell from Republic National with a letter stating that the doctor had advised that he had no records for Powell and that the application was no longer acceptable. Thompson called the hospital again regarding the records and was told to get an authorization from Powell. He wrote Powell the same day sending him an authorization form to sign. The following day, September 5, Thompson received a telephone call from Republic National advising him that they had received a telephone call from Powell the previous day and directing Thompson to deliver the refund check to Powell and to tell him his application had been rejected because the medical records had not been received. With that, Thompson finally gave up his efforts to get the policy issued and sent Powell his refund check.
The first issue raised by appellant is whether the court erred in granting summary judgment in favor of Republic National. Summary judgment is governed by Rule 56 of the Alabama Rules of Civil Procedure which reads, in pertinent part as follows:
 56 (c) ". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."
Mr. Monaghan, Assistant Vice President, Underwriting Division, submitted an affidavit in support of Republic National's motion for summary judgment. The affidavit set forth the company's correspondence with Thompson and Powell, essentially as was testified to at trial, and stated that because they could not obtain Powell's medical records on August 30, 1973, "the company again returned the applicant's check for the premium to Max K. Thompson for refund to Thomas E. Powell and the company informed Max K. Thompson that the application was no longer acceptable."
In response to the motion and affidavit, Powell submitted an affidavit primarily related to his conversations with Max Thompson.
Appellant's main argument goes to a question of law. He claims that the following statement in the application is actually a binder:
 "I understand that if the first full premium is paid with the application and if the application is approved by the Company at the Home Office . . . the policy will be effective from the date of application."
Appellant's argument that the above clause is a binder and that he was temporarily covered until the application was approved or denied appears to be advanced under two somewhat separate theories of contract law — interpretation of contract and unconscionability. In Gaunt v. John Hancock Mutual LifeIns. Co., 2 Cir., *Page 1295 160 F.2d 599, cert. den. 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858
(1947), a clause in an application for life insurance read:
 ". . . [I]f the Company is satisfied that on the date of the completion of Part B of this application I was insurable . . . and if this application . . . is, prior to my death, approved by the Company at his Home Office, the insurance applied for shall be in force as of the date of completion of said Part B. . . ." Id. at 599-600.[1]
In interpreting this clause, Judge L. Hand noted the following:
 "An underwriter might so understand the phrase ['if the application, including Part B, is prior to my death, approved by the Company, at its Home Office,' as a condition subsequent to the promise that `the insurance shall be in force on the date of the completion of Part B'], when read in its context, but the application was not to be submitted to underwriters; it was to go to persons utterly unacquainted with the niceties of life insurance, who would read it colloquially. It is the understanding of such persons that counts; and not one in a hundred would suppose that he would be covered, not `as of the date of completion of Part B,' as the defendant promised, but only as of the date of approval. . . . But it does greater violence to make the insurance `in force' only from the date of `approval'; for the ordinary applicant who has paid his first premium and has successfully passed his physical examination, would not by the remotest chance understand the clause as leaving him uncovered until the insurer at its leisure approved the risk; he would assume that he was getting immediate coverage for his money. . . . It is true that in Connecticut as elsewhere the business of writing life insurance is not colored with a public interest; yet in that state, again as elsewhere, the canon contra proferentem is more rigorously applied in insurance than in other contracts, in recognition of the difference between the parties in their acquaintance with the subject matter. A man must indeed read what he signs, and he is charged, if he does not; but insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion." Id. at 601-602.
In Western and Southern Life Ins. Co. v. Vale, 213 Ind. 601,12 N.E.2d 350 (1938), the applicant's receipt read as follows:
 ". . . Said amount [first premium] is to be applied on account of premiums in the event such policy is issued, otherwise to be returned.
 "Provided the insured be in sound health . . . on the date of said application, the company's liability under *Page 1296 
such policy, if and as issued, shall commence as of the date of said application." Id. at 605, 12 N.E.2d 350, 352.
To this, the court commented:
 ". . . It may be that the acceptance of the application and of his money is a `qualified one,' but it cannot be doubted that the company has represented to the applicant that it has become conditionally liable under the policy for which he had applied, and that the ordinary person, and especially the ordinary applicant for industrial insurance, would be led to believe that he is conditionally insured. It would be unconscionable to permit an insurance company, issuing such a receipt and receiving a premium from an applicant, part of which was to pay for protection under its policy from the date of the application to the date of acceptance, to say that it had not bound itself to give anything whatever for that portion of the premium; that it deliberately intended to accept the premium for that period, but that it never intended to, and that it had not insured the applicant for that period. . . ." (Emphasis added.) Id. at 611, 12 N.E.2d 350, 354.
In Starr v. Mutual Life Ins. Co. of New York, 41 Wn. 228,83 P. 116 (1905), the court commented on a clause in an insurance application "making the insurance in force from this date, provided this application shall be approved . . . at the head office. . . ." Id. at 230, 83 P. 116, 117.
 ". . . The object of the second provision of the application, above quoted, is not entirely clear, especially from the standpoint of the insured. If there was to be no contract of insurance in any event until the application was approved at the home office and a policy issued thereon, it would seem entirely immaterial to the insured whether the contract related back to the date of the application or not. If he lived until the application was approved and a policy issued, it would seem a matter of indifference to him whether he had been insured during the interim between the date of the application and the date of the issuance of the policy. On the other hand, if he died before the application was approved and the policy issued, his beneficiaries would derive no benefit from the insurance. The chief object of the provision would, therefore, seem to be to enable the insurance company to collect premiums for a period during which there was in fact no insurance, and consequently no risk." Id. at 231-232, 83 P. 116, 117.
The court in Francis v. Mutual Life Ins. Co. of New York,55 Or. 280, 106 P. 323 (1910), responded to a similar clause:
 ". . . The clause seems to be a mere trick on the part of the insurance company to deceive the applicants into the belief that they have temporary insurance, and thereby induce them to part with their money in advance of the issuance of the policy. It is a practice unworthy of a great business corporation, and is commented upon by Rudkin, J., in Starr v. Mutual Life Ins. Co., 41 Wn. 228, 83 P. 116, in terms none too severe." Id. at 292, 106 P. 323, 327-328.
The annotation, "Temporary life, accident, or health insurance pending approval of application or issuance of policy," (2 A.L.R.2d 943; 2 A.L.R.2d Later Case Service 239) explains the reasoning behind such clauses:
 "Since, in the absence of a specific agreement, the payment of the first premium and the delivery of the policy are concurrent acts, a period intervenes between the signing of the application by the applicant and the delivery of the policy. During this period no money has been advanced to the insurance company, and no insurance is in effect. This interval, of a few days to several weeks, depending upon the time consumed in investigation and physical examination of the applicant, in passing upon his application at the home office, and in the traveling of the application and policy to and from the home office, is highly undesirable from the point of view of the insurer as well as of the applicant. The *Page 1297 
disadvantage to the applicant consists in the fact that he is not covered by insurance during this period, while the disadvantage to the insurer consists in the fact that during this period the applicant possesses the power to revoke the offer made in his application. This disadvantage is a very real one as far as the insurer is concerned, since if the applicant decides to exercise his power, either because he chooses not to carry any insurance at all, or because he chooses to purchase it of a rival company, the company suffers a loss of what it has expended for the investigation and medical examination of the applicant, aside from the loss of business itself.
Binding receipts.
 "To obtain some measure of protection against the applicant's arbitrary withdrawal of his offer during the company's extensive investigation of his insurability, the insurance companies have hit upon the idea of issuing so-called binding receipts to the applicant upon the payment of the first premium. These binding receipts, or conditional binding receipts, as these instruments are sometimes, though less frequently, called, usually contain a provision which, in some instances, is duplicated in the application itself, to the effect that the insurance shall be considered as in force from the date of the receipt, or the date of the medical examination, provided the application is approved and accepted at the home office of the insurer. Sometimes the date of approval or of issuance of the policy is chosen as the date the policy shall become effective, and in some instances no condition is imposed upon the applicant. The exact language of these provisions varies greatly.
 The issuance of these binding receipts effectively does away with the disadvantage threatening the insurer. They protect it in two ways: The applicant to whom a binding receipt is issued feels, as a rule, contractually obliged to perform and, should he withdraw his application, he is unlikely to resort to a lawsuit to recover the relatively small sum paid. In addition to achieving this primary object, the issuance of a binding receipt has the incidental advantage for the insurer that it serves to give the insurer the use of the premium money at the earliest date possible and that it offers a selling point of which no agent fails to make the utmost in his talks with the prospective customers." 2 A.L.R.2d 943, 945-947.
See also Service v. Pyramid Life Insurance Company,201 Kan. 196, 209-210, 440 P.2d 944, 956 (1968).[2]
In response to the theory that the canon contra proferentem
(against the party who *Page 1298 
proffers a thing) should apply, appellee cites Alabama GoldLife Ins. Co. v. Mayes, 61 Ala. 163 (1878). Alabama Gold
contained a clause in a receipt very similar to the one in question. "The said George Blakely shall be considered as insured from the date of this receipt, if said application shall be approved and accepted by said company. . . ." Id. at 164. The court held that the application was no more than a proposition to enter into a contract of insurance. "The receipt discloses, as we have said, the true character of the transaction, a proposal for a contract to an agent, the agent reserving to his principal, from abundant caution, the absolute and unqualified right of acceptance or rejection." Id. at 167.
Appellee also cites United Insurance Co. of America v.Headrick, 275 Ala. 594, 157 So.2d 19 (1963). However, in UnitedInsurance the application read: ". . . and do you agree and understand that this application shall not be binding upon the Company till accepted by the Company? Yes." Id. at 595,157 So.2d 19, 20. The case does not indicate that if the applicant were approved the approval would relate back to the date of the application. Thus, United Insurance would not apply to the instant situation.
In the recent case of Barnes v. Atlantic Pacific Life Ins.Co. of Amer., 295 Ala. 149, 325 So.2d 143 (1975), this court confronted a clause of an insurance receipt stipulating that the effective date of the policy would be the later of:
 ". . . date of application, or date of medical examination, if required, provided that the
 "1. proposed insured is determined by the Company at its Home Office in Atlanta, Georgia, in accordance with its rules and practices, to be insurable on such date for the policy exactly as applied for;
 "2. first full premium is paid in cash on date of application;
 "3. policy is issued exactly as applied for within 30 days from this date; *Page 1299 
 "4. total insurance in force with the Company on the life of the proposed insured, including amount now applied for, will not exceed $50,000.00." Id. at 152, 325 So.2d 143, 146.
No medical examination had been required.
On the question of ambiguity, Justice Bloodworth stated that:
 ". . . we see no ambiguity under the language at hand here. The policy provides that, if a binding receipt has been issued, the effective date of the policy is to be determined under the provisions of the binding receipt. The binding receipt provides that its date is to be the effective date of the policy only if certain conditions are satisfied . . ."
Id. at 157, 325 So.2d 143, 151.
The application presently before us is one for hospitalization and disability insurance. The clause in question states, in effect, that the effective date of the policy is from the date of the application if the first premium is paid then and if the company subsequently approves the application without modification. Based on Alabama case law, we cannot say that the clause is ambiguous. Alabama Gold Life Ins.Co. v. Mayes, supra; Barnes v. Atlantic Pacific Life Ins. Co.of Amer., supra.
However, that does not answer the question of whether the clause is unconscionable. This question would seem to turn on whether the applicant received any benefit between the date of the application and the date of approval. Appellee notes in brief that "of course, the insurer cannot arbitrarily withhold its acceptance of the application nor may an insurer reject the application merely because a loss has occurred following the date of the execution of the application." If such were the case, an applicant would receive a benefit. However, in AlabamaGold Life Ins. Co., supra, this court adopted the language of the United States Supreme Court in Ins. Co. v. Young's Admr., 23 Wall 85, 106, 90 U.S. 85, 106, 23 L.Ed. 152, 154, (1875).
 "It was clearly within the power of the company, under the condition expressed, wholly to reject the application, without giving any reason; or to accept the proposition with such modifications of the term specified, and of the usual conditions of such policies, as it might see fit to prescribe. The entire subject was both affirmatively and negatively within its choice and discretion." Id. at 169.
Moreover, Republic's agency contract with Thompson authorizes him "to deliver policies of insurance and annuities as directed by the Company, if the proposed insured is in good health and the first premium has been paid . . ." In other words, Thompson is authorized to deliver the policy only if the applicant is in good health at the time of delivery, not merely if he had been in good health at the time of payment of the first premium. In Alabama, delivery is complete upon mailing of the policy by the insurance company to the agent. United Ins. Co. of America, supra. Yet that does the insured little good if he never becomes aware that the policy was mailed in the first place.
Furthermore, if approval may not be arbitrarily withheld, who is to determine what is "arbitrary" — the courts? Surely, the conclusion that the clause before us is unconscionable would be less intrusion into the insurance industry than would be the courts deciding whether an insurance company "arbitrarily" withheld approval of an application.[3]
From what we have said with regard to the contract clause in question, it *Page 1300 
necessarily follows that under the circumstances of this case we must conclude that the clause coupled with payment of the premiums created a temporary binder. It was therefore error to grant summary judgment for Republic National.
In view of our holding, the appeal against Thompson is moot, and therefore is dismissed. The summary judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
BLOODWORTH, MADDOX, FAULKNER, JONES, SHORES, EMBRY and BEATTY, JJ., concur.
HEFLIN, C.J., concurs in the result.
[1] The annotation, "Temporary life, accident, or health insurance pending approval of application or issuance of policy," (2 A.L.R.2d 943; 2 A.L.R.2d Later Case Service, 239) covers the subject of temporary insurance well. The writer grouped the variety of insurance clauses into one of four types:
 "(1) The first type of contract, around which most of the existing conflict centers, usually provides that any insurance shall, by reason of the payment of a premium at the time of the application, be in force from the date of the application (or of the medical examination), provided the application shall be approved and accepted, as applied for, at the home office of the insurance company.
 "(2) Another type of receipt provides that the insurance shall be effective as of the date of the medical examination, if the company shall be satisfied that on that date the applicant was an insurable risk and that the application was otherwise acceptable under the company's regulations for the amount and plan of the policy applied for. In some instances the date of the application is taken instead of the date of the medical examination.
 "(3) In a third type of receipt the provision is that the insurance shall be in force as of the date of the application or the medical examination if the company at its home office shall issue the policy on the plan applied for. In some instances delivery of the policy is required.
 (4) The fourth type of receipt is represented by the unconditional provision that the insurance shall take effect as of the date of the approval of the application by the insurer." Id. at 960-963.
[2] The states are clearly divided on how to deal with clauses such as the one before us. Of the four types listed in Footnote 1, the first type most closely approximates the clause before us. As to this type, the American Law Reports annotation, 2 A.L.R.2d 943, 2 A.L.R.2d LCS 239, lists the following states as holding that no contract exists before approval.
 "United States. — Mutual L. Ins. Co. v. Young (1875) 23 Wall 85, 23 L ed 152; Steinle v. New York L. Ins. Co. (1897; CCA 5th) 81 F 489; Pace v. Provident Sav. Life Assur. Soc.
(1902; CCA 5th) 113 F 13; Mohrstadt v. Mutual L. Ins. Co.
(1902; CCA 8th Mo) 115 F 81; Brancato v. National Reserve L. Ins. Co. (1929; CCA 8th Mo) 35 F.2d 612; Whitney v. Union Cent. L. Ins. Co. (1931; CCA 8th Neb) 47 F.2d 861; Braman v. Mutual L. Ins. Co. (1934; CCA 8th Minn) 73 F.2d 391; Winslow v. Mutual L. Ins. Co. (1938; CCA 9th Cal) 93 F.2d 802
(dictum).
 "Alabama. — Alabama Gold L. Ins. Co. v. Mayes (1878) 61 Ala. 163.
 "Arkansas. — Cooksey v. Mutual L. Ins. Co. (1904) 73 Ark. 117, 83 S.W. 317, 108 Am St Rep 26.
 "Georgia. — Hill v. Life C. Ins. Co. (1935) 51 Ga. App. 578, 181 S.E. 104.
 "Kentucky. — Northwestern Mut. L. Ins. Co. v. Neafus
(1911) 145 Ky. 563, 140 S.W. 1026, 36 LRA NS 1211.
 "Michigan. — Smiley v. Prudential Ins. Co. (1948) 321 Mich. 60, 32 N.W.2d 48.
 "New York. — Corning v. Prudential Ins. Co. (1936) 248 App. Div. 187, 288 N.Y.S 661 (affd without op (1937) 273 N.Y. 668, 8 N.E.2d 338); Arcuri v. Prudential Ins. Co. (1936) 248 App. Div. 501, 290 N.Y.S 567; Hughes v. John Hancock Mut. L. Ins. Co.
(1937) 163 Misc. 31, 297 N.Y.S 116.
 "South Carolina. — Hyder v. Metropolitan L. Ins. Co.
(1937) 183 S.C. 98, 190 S.E. 239.
 "Texas. — Connecticut Mut. L. Ins. Co. v. Rudolph (1876) 45 Tex 454; Beaty v. Southland L. Ins. Co. (1930; Tex Civ App) 28 S.W.2d 895.
 "Wyoming. — Wheelock v. Clark (1913) 21 Wyo. 300, 131 P. 35, Ann Cas 1916A 956." 2 A.L.R.2d 943, 964-965.
 "Ark. — Union Life Ins. v Rhinehart (Ark) 315 S.W.2d 920
(citing annotation); Dove v Arkansas Nat. Life Ins. (Ark) 386 S.W.2d 495 (citing annotation).
 "Killpack v National Old Line Ins. Co. (CA10th Utah) 229 F.2d 851 (applying Arkansas law).
 "Ga. — Kammerer v Metropolitan Life Ins. Co. (Ga App) 98 S.E.2d 391; Etheridge v. Woodmen of the World Life Ins. Soc. 223 Ga. 231, 154 S.E.2d 369, conformed to (Ga App) 155 S.E.2d 862.
 "Neb. — Adolph v Union Nat. Life Ins. Co. 170 Neb. 38, 101 N.W.2d 504.
 "Tex. — Southwestern Life Ins. Co. v Evans (Tex Civ App) 262 S.W.2d 512 (citing annotation), error ref; Devenport v. Great Commonwealth Life Ins. Co. (Tex Civ App) 324 S.W.2d 566; Great Southwest Life Ins. Co. v Henson (Tex Civ App) 401 S.W.2d 89, error ref n r e (citing annotation)." 2 A.L.R.2d LCS 239, 241.
 The following states are listed as holding that the insurance is in effect, on the ground of an assumed intention of the parties:
 "United States. — Gaunt v. John Hancock Mut. L. Ins. Co.
(1947; CCA.2d Conn) 160 F.2d 599 (cert den (1947) 331 U.S. 849, 91 L ed 1858, 67 S Ct 1736).
 "Kentucky. — Indiana Nat. L. Ins. Co. v. Maines (1921) 191 Ky. 309, 230 S.W. 54 (dictum).
 "Massachusetts. — De Cesare v. Metropolitan L. Ins. Co.
(1932) 278 Mass. 401, 180 N.E. 154, 81 ALR.327 (doubtful).
 "New York. — Hart v. Travelers Ins. Co. (1932) 236 App. Div. 309, 258 N.Y.S 711 (affd without op (1933) 261 N.Y. 563, 185 NE 739 (doubtful); Buono v. Prudential Ins. Co. (1933) 240 App. Div. 898, 267 N.Y.S 972.
 "Ohio. — Prudential Ins. Co. v. Howard (1935; App) 18 Ohio L Abs 688.
 "See Leube v. Prudential Ins. Co. (1947) 147 Ohio St. 450, 72 N.E.2d 76, 2 ALR.2d 936.
 "Washington. — Starr v. Mutual L. Ins. Co. (1905) 41 Wn. 228, 83 P. 116." 2 ALR.2d 943, 967.
 "Cal. — Ransom v. Penn Mutual Life Ins. Co. 43 Cal.2d 420, 274 P.2d 633.
 "Wernecke v Pacific Fidelity Life Ins. Co. 238 Cal.App.2d 884, 48 Cal.Rptr. 251.
 "Metropolitan Life Ins. Co. v Wood (CA9 Cal) 302 F.2d 802
(applying California law).
 "Md. — Simpson v Prudential Ins. Co. (Md) 177 A.2d 417
(citing annotation).
 "N.J. — Life Ins. Co. v De Chiaro, 68 N.J. Super. 93, 172 A.2d 30 (citing annotation)." 2 A.L.R.2d LCS 239, 241-242.
[3] In dealing with an "insurable" type clause (the second type of clause mentioned in Footnote 1) as distinct from an "approval" type clause (the first type of clause mentioned in Footnote 1), many courts do look to the good faith of the insurer in determining the applicant's insurability as of the date of the application. If, at the time of the application or medical examination the insured was an insurable risk, the temporary contract of insurance is found to be in force.
 "Missouri. — Fields v. Equitable Life Assur. Soc. (1938; Mo App) 118 S.W.2d 521; Wolfskill v. American Union L. Ins. Co.
(1943; Mo App) 172 S.W.2d 471.
 "Ohio. — Duncan v. John Hancock Mut. L. Ins. Co. (1940) 137 Ohio St. 441, 31 N.E.2d 88.
 "Pennsylvania. — Stonsz v. Equitable Life Assur. Soc.
(1936) 324 Pa. 97, 187 A 403, 107 ALR.178.
 "Texas. — Colorado Life Co. v. Teague (1938; Tex Civ App) 117 S.W.2d 849." 2 ALR.2d 943, 986.
 "Ga. — Coastal State Life Ins. Co. v Vickers, 97 Ga. App. 646, 104 S.E.2d 140.
 "Ill. — Johnson v Equitable Life Assur. Soc. (CA7 Ill) 275 F.2d 315 (applying Illinois law).
 "Md. — Simpson v Prudential Ins. Co. (Md) 177 A.2d 417
(citing annotation).
 "N.J. — Life Ins. Co. v De Chiaro, 68 N.J. Super. 93, 172 A.2d 30 (citing annotation).
 "N.C. — Wright v Pilot Life Ins. Co. (CA4 Va) 379 F.2d 409
(citing annotation).
 "Or. — Morgan v State Farm Life Ins. Co. (Or) 400 P.2d 223
(citing annotation).
 "Pa. — McAvoy Vitrified Brick Co. v North American Life Assur. Co. 395 Pa. 75, 149 A.2d 42 (citing annotation).
 "Tenn. — Life Casualty Ins. Co. v Vertrees (Tenn App) 318 S.W.2d 559 (citing annotation);
 "Liberty Nat. Life Ins. Co. v Hamilton (CA6 Tenn) 237 F.2d 235, stated supra. § 8.
 "Tex. — United Founders Life Ins. Co. v Carey (Tex.Civ.App.) 347 S.W.2d 295; Henry v Lincoln Income Life Ins. Co.
(Tex.Civ.App.) 405 S.W.2d 167.
 "Utah. — Prince v Western Empire Life Ins. Co. 19 Utah 2d 174, 428 P.2d 163 (citing annotation)." 2 ALR.2d LCS 239, 244.
 On the other hand, if, the applicant at the time of the application or the medical examination was not an insurable risk, the company will not be liable under the "binding receipt."
 "United States. — Warren v. New York L. Ins. Co. (1942; CCA5th La) 128 F.2d 671 (affg (1941 DC) 37 F. Supp. 358).
 "Illinois. — Gerrib v. Northwestern Mut. L. Ins. Co.
(1930) 256 Ill. App. 506.
 "Iowa. — Reynolds v. Northwestern Mut. L. Ins. Co. (1920) 189 Iowa 76, 176 N.W. 207.
 "Louisiana. — Gonsoulin v. Equitable Life Assur. Soc.
(1922) 152 La. 865, 94 So. 424.
 "Missouri. — State ex rel. Equitable Life Assur. Soc. v. Robertson (1916; Mo) 191 S.W. 989.
 "Wyoming. — Raymond v National L. Ins. Co. (1929) 40 Wyo. 1, 273 P. 667." 2 A.L.R.2d 943, 987.
"U.S. — Cortez v Life Ins. Co. (CA8 Iowa) 408 F.2d 500.
 "Del. — Novellino v Life Ins. Co. (DelSup) 216 A.2d 420
(citing annotation).
 "Iowa. New England Mut. L. Ins. Co. v Hinkle (CA8 Iowa) 248 F.2d 879 (citing annotation) revg (DC) 147 F. Supp. 547 (applying Iowa law).
 "Ky. — Investors Syndicate Life Ins. Annuity Co. v Slayton (Ky) 429 S.W.2d 368 (citing annotation).
 "Mo. — Porter v Farm Bureau Life Ins. Co. (MoApp) 322 S.W.2d 927.
 "N.J. — Allen v Metropolitan Life Ins. Co. 83 N.J. Super. 223, 199 A.2d 254 (citing annotation).
 "Utah. — Green v Equitable Life Assur. Society, 3 Utah 2d 375, 284 P.2d 695." 2 ALR.2d LCS 239, 244.