Gwen A. **JACOBSON,** Plaintiff and Appellant,

v.

**KANSAS CITY LIFE INSURANCE CO.,** Defendant and Respondent.

No. 17790.

Supreme Court of Utah.

July 27, 1982.

Lawrence E. Stevens, John B. Wilson of Parson, Behle & Latimer, Salt Lake City, for plaintiff and appellant.

Ray R. Christensen of Christensen, Jensen, Kennedy & Powell, Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

Plaintiff Gwen A. Jacobson, as personal representative of the estate of Rawlin Jacobson, appeals a summary judgment which dismissed her action to recover the proceeds of a temporary binder of life insurance. The basis for the appeal is that the evidence presented at trial was sufficient to raise a genuine issue of material fact as would preclude the entry of summary judgment.

Rawlin Jacobson was president and chairman of the board of the Utah Independent Bank of Salina and president of the Bank of Ephraim. He was also an agent for defendant Kansas City Life Insurance Company and occasionally wrote life insurance policies covering persons taking out loans with his bank.

In July, 1978, a public health nurse visited the Bank of Ephraim and took Mr. Jacobson's blood pressure. She informed him that it was dangerously elevated and recommended that he consult a physician. On July 18, 1978, Dr. Bruce Harless examined Mr. Jacobson's eyes, ears, nose, throat, thyroid, heart and lungs, took his blood pressure and performed a computer blood analysis. Although the blood pressure reading was high, Dr. Harless did not diagnose hy-

pertension at that time. He did, however, advise Mr. Jacobson that he was "a prime candidate for a coronary." Nothing was said between Mr. Jacobson and the doctor concerning life insurance.

During August, 1978, Mr. Jacobson returned to Dr. Harless' office twice for further tests and exminations. On August 1, a chest x-ray and EKG were performed, both of which were normal. His blood pressure was also taken and was high. The final examination of Mr. Jacobson was made on August 18, at which time his blood pressure was again elevated. Despite the persisting high blood pressure, Dr. Harless decided not to make a final diagnosis until after a Treadmill EKG had been performed. Arrangements were made to have the Treadmill performed in Provo. However, due to several appointment cancellations the test was never taken. No mention was made, nor were any forms provided, concerning life insurance on either of these occasions.

It is unclear from the record, but in either August or November of 1978, Mr. Jacobson, assisted by Conrad Jarman (general agent for defendant), wrote a $250,000 policy on one Jeffrey Cox. During the meeting between Cox, Jarman and Jacobson, Jarman instructed Cox that it would be necessary for him to have a physical examination and EKG. Immediately following this meeting, Jacobson informed Jarman that he had recently been given a "clean bill of health" by his doctor and would like to take out a policy on himself to secure a loan of $250,000 that he had obtained from Tracy Collins Bank & Trust. Jarman told him to fill out an application and pay the premium. He also instructed him to obtain a medical examination due to the amount of the policy.

On or about November 6, 1978, Jarman received from Jacobson an application for a $250,000 term policy, together with a check in the amount of $932.25, the approximate net first annual premium on the policy for which application was made. Jarman executed a receipt for the payment to Jacobson, and transmitted the application to the company. The receipt contained provisions regarding a temporary insurance policy in the amount of $100,000 to be in effect until defendant either accepted or rejected Jacobson as an insurance risk. According to a clause in the receipt, this temporary coverage was to commence upon the latest of two dates: "(1) the date of the receipt, and (2) the date of completion of any and all medical examinations required by the Company."

In an effort to comply with the requirement of the insurance policy to obtain a medical examination, Jacobson sent a letter to Dr. Harless, dated November 3, 1978, requesting him to fill out the insurance company's medical examination report forms, enclosed with the letter, based on the July and August examinations. A sight draft was also included in the materials sent to the doctor. These materials were received by Harless on approximately November 5, 1978.

Although Dr. Harless did complete and cash the sight draft, he did not complete the examination report forms at that time because the examinations he had performed in July and August did not enable him to supply all the data requested on the forms. He intended to contact Jacobson and inform him of the inadequacy of those previous examinations for insurance purposes. However, before he was able to do so, on November 18, 1978, Jacobson died of a heart attack.

Shortly thereafter, Dr. Harless, in response to a request from Jacobson's widow, filled out the forms, based on the previous examinations (July and August), and sent them and the EKG chart to defendant. He admitted that he "stretched things somewhat," but that the forms "conveyed the essence" of Jacobson's health. Based upon the incompleteness of the medical forms and their untimely arrival to defendant, the application was eventually denied.

Defendant denied liability under the temporary binder on the basis that the policy was not effective at Jacobson's death because the required medical examination had not been completed.

Plaintiff's sole contention on appeal is that the evidence presented at trial raised material questions of fact concerning the completion of defendant's medical examination forms, and therefore precluded the entry of summary judgment.

The pertinent language of the conditional receipt for temporary life insurance which gave rise to this litigation reads as follows:

1. Subject to the terms of the Policy applied for, temporary insurance will become effective for coverage equal to the lesser of (a) the amount applied for, or (b) $100,000 commencing on the latest of the following dates: (1) the date of this receipt, and (2) *the date of completion of any and all medical examinations required by the Company.* [Emphasis added.]

Plaintiff argues that the underscored language is susceptible to numerous interpretations, particularly the phrase "date of completion." Plaintiff asserts that an ambiguity in the terms of an insurance policy constitutes an issue of fact which cannot be dismissed by an order for summary judgment.[1] This rule is, however, inapplicable in this case.

The language on the receipt governing the temporary life insurance policy clearly sets forth the requirement to complete a medical examination. This is a condition precedent to insurability under the temporary binder. Jacobson was certainly aware of this condition precedent. He was an agent of the defendant company, which suggests his familiarity with policy provisions. He was present when Jarman told Cox he needed medical examinations to purchase a $250,000 policy and was shortly thereafter informed of the same requirement for himself. He also evidenced his knowledge of this requirement by sending the medical forms to Dr. Harless for completion. Clearly, no problem of ambiguity exists as to the principal condition to coverage.

Based on the facts of this case, as they are before this Court, it was unnecessary for the trial court, and it is unnecessary now for this Court, to consider the alleged ambiguity of the particular phrase, "date of completion." The importance and relevance of this issue only arise upon plaintiff's showing that the appropriate examinations were, in fact, completed sometime prior to the decedent's death. In this case, plaintiff failed to meet that burden. The attempted use of the July and August examinations to fulfill the insurance requirements did not suffice. Although those examinations provided much of the required information, the testimony of Dr. Harless, the examining physician, was that they were insufficient and that a further examination was necessary. The doctor further testified that he was unable to examine Mr. Jacobson for that purpose, prior to his death, and consequently did not complete the examination forms. The sending of those forms to defendant after Jacobson's death was ineffectual, because they still did not represent a "completed examination" as contemplated by either defendant or the doctor himself. Plaintiff's failure to show compliance with the fundamental condition precedent of the policy precludes argument of secondarily related issues, such as the interpretation of the phrase "date of completion."

Plaintiff further argues that Dr. Harless became an agent for defendant when he cashed the sight draft. Accordingly, his delay in filling out the forms should be a risk incurred by defendant and not by the decedent. This argument is without merit. The sight draft did not represent an agency contract under these facts. Dr. Harless was independently selected by the decedent to provide the information on the insurance forms and was thereby responsible to him only. Had the doctor been selected by defendant, or had he been defendant's company doctor, this contention might have had substance.

Although it is indeed unfortunate that Mr. Jacobson died prior to taking the scheduled physical examination, nevertheless, this Court must conclude in light of the

---

1. Rule 56(c), Utah Rules of Civil Procedure.

undisputed facts before it, that there is no basis upon which any liability for that misfortune can justly be imposed upon the defendant insurance company. We hold that there was no genuine issue of material fact presented to the trial court and that it held correctly that defendant Kansas City Life Insurance Company was entitled to judgment as a matter of law.

Affirmed.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.