ADAMS, Justice.
This appeal is from a directed verdict entered in the Circuit Court of Mobile County in favor of defendant, Liberty National Life Ins. Co. (Liberty National), and against plaintiff, Garilyn Blanton. Plaintiff sued for the face amount of a life insurance policy which her husband applied for shortly before he died in an automobile accident on March 7, 1980. We affirm.
The events leading up to the filing of this action are as follows:
On February 26, 1980, Donnie Blanton applied for a $25,000.00 life insurance policy with Liberty National. Blanton was an employee of Liberty National at the time he submitted this application for insurance, and had worked there for approximately eighteen months. Blanton completed the application and had Thomas Williams, an agent of Liberty National, sign for the company. On the application, Blanton stated that he already had $25,000.00 of life insurance with the company, but evidence produced at trial showed unequivocally that he had $35,000.00 of life insurance at that time. Therefore, Blanton would have had $60,000.00 of life insurance had this application been approved by Liberty National. The importance of this distinction is that the company requires any applicant in the age group that Donnie Blanton was in to undergo a medical examination prior to the issuance of insurance when that applicant’s insurance exceeds $50,000.00, including both applied-for insurance and already acquired insurance.
Contemporaneous with the submission of the application for life insurance, Blanton paid one-twelfth of the annual premium as required by the terms of the policy before it could become effective. Approximately one week later, on March 6, 1980, an application status letter was mailed from Liberty National’s Birmingham office to Blanton in Mobile, to inform him that he would have to undergo a medical examination before his application for life insurance could be approved. There is no proof that Blan-ton recieved this letter before his death on March 7, 1980. It is undisputed, however, that Blanton did not undergo a medical examination, pursuant to this letter, prior to his death.
After Liberty National denied coverage regarding this application for life insurance, Blanton’s widow, Garilyn Blanton, filed suit seeking the benefits of the policy. The trial court granted summary judgment in favor of the insurer and this Court reversed, 434 So.2d 773, due to insufficiency of the affidavits in support of the summary judgment motion. The case went to trial on September 17, 1984, and the trial court directed a verdict for the insurer on all counts. Plaintiff has appealed from the directed verdict only as it relates to the contract claim.
The crucial question in this litigation is: was there a contract of temporary insurance in existence at the time of Donnie Blanton’s death? Plaintiff asserts that, according to the terms of the application for insurance and the receipt given to her husband, there was a contract of temporary insurance between her husband and Liberty National, as all of the conditions set forth therein were satisfied. Liberty National denied coverage solely on the basis that Donnie Blanton had not undergone a medical examination as was required by the company. Plaintiff maintains that the application and receipt do not indicate, by their own terms, that a medical examination was required. Plaintiff also contends that our holding in Powell v. Republic National Life Ins. Co., 337 So.2d 1291 (Ala.1976), should govern the instant appeal. In Powell, this Court held that a temporary binder of insurance was created until the application was actually approved or disapproved, and that any other result would be unconscionable under the terms of the application and receipt.
We are of the opinion that the case at bar is unlike Powell. First, this Court recognized in Powell that the insurance policy was not submitted by an underwriter, who would have been familiar with the language typically included in these policies, but was submitted by a lay person, who could not be held to possess such an under *69 standing of the terms in the application and receipt. In the instant case, however, the applicant was an insurance agent for the company whose coverage he sought to obtain, so that he undoubtedly was more familiar with the terms of the application and receipt.
Another important factor which distinguishes the case at bar from Powell is the type of clause used in the application and receipt. In Powell, the clause states:
"I understand that if the first full premium is paid with the application and if the application is approved by the Company at the Home Office ... the policy will be effective from the date of application.”
In the “Declaration” section of the application for insurance before us on appeal, the following langauge appears:
3. The Company will require a medical examination of the Proposed Insured (a) if the amount of insurance hereby applied for exceeds $30,000.00 for a Proposed Insured whose age nearest birthday on the date of this application is 0 to 30 years inclusive ...; or (b) if the Proposed Insured is 51 years of age or older nearest birthday on the date of this application; or (c) if the Proposed Insured has been previously rejected for insurance by any insurance company; or (d) if requested by the Company for any other reason. (Emphasis added.)
The conditional receipt given to Donnie Blanton provides:
UNLESS ALL CONDITIONS SPECIFIED IN PARAGRAPH “A” BELOW ARE FULFILLED EXACTLY, NO INSURANCE WILL BECOME EFFECTIVE PRIOR TO DELIVERY OF THE POLICY. NO AGENT OF THE COMPANY IS AUTHORIZED TO CHANGE OR WAIVE ANY OF SUCH CONDITIONS.

A. CONDITIONS UNDER WHICH TEMPORARY INSURANCE FOR A LIMITED AMOUNT MAY BECOME EFFECTIVE PRIOR TO POLICY DELIVERY.
If: (1) The amount of money received with the application for Insurance is not less than one-twelfth of the first annual premium for the amount of insurance which may become effective prior to delivery of the policy on the plan applied for and any check or draft given in payment thereof is honored when first presented to the drawee bank; and (2) the application form has been completed and all required medical examinations, tests, x-rays, and electrocardiograms on the Proposed Insured are completed within sixty days from the date of part one of the application....

E. EFFECTIVE DATE DEFINED.
As used in this Receipt, “Effective Date” shall mean the later of: (1) the date of completion of part one (and part two if required) of the application from which this Receipt is detached or (2) the date of completion of all medical examinations, tests, x-rays and electrocardiograms required by the Company. (Emphasis added.)
In Powell, this Court dealt with an “approval-type” clause, which “usually provides that any insurance shall, by reason of the payment of a premium at the time of the application, be in force from the date of the application (or the medical examination), provided the application shall be approved and accepted, as applied for, at the home office of the insurance company.” Annot., 2 A.L.R.2d 943, 960 (1948). Thus, after the applicant pays the first full premium and submits the application, he has done all that is required of him, and must then wait to see if the company will approve his application.
In the case before us, we are not presented with an approval-type clause, but, rather, an insurability-type clause, which usually provides that:
the insurance shall be effective as of the date of the medical examination, if the company shall be satisfied that on that date the applicant was an insurable risk and that the application was otherwise acceptable under the company’s regula *70 tions for the amount and plan of the policy applied for. In some instances the date of the application is taken instead of the date of the medical examination.
Id., at 960-61. It is uncontroverted that Donnie Blanton did not satisfy one of the conditions precedent set forth by the company in order for there to be a temporary binder of insurance, namely, he did not undergo a required medical examination prior to his death. Plaintiff argues that there is nothing in the terms of the application or reciept requiring her husband to undergo a medical examination. The policy was submitted on a non-medical basis due to the misinformation supplied by Donnie Blanton concerning the amount of coverage. Once the correct amount of existing coverage was discovered, the company sent Donnie Blanton a letter to notify him that a medical examination was required before even a temporary binder of insurance could become effective. The insurance company did all that it could do under the circumstances, and, although it is unfortunate that Donnie Blanton did not undergo the required medical examination prior to his death, we are of the opinion that there is no basis upon which any liability for such misfortune can rightly be placed upon Liberty National. See Jacobson v. Kansas City Life Ins. Co., 652 P.2d 909 (Utah 1982).
A discussion of the policy reasons behind the distinction between an approval-type clause and an insurability-type clause is found in the case of Williams v. First Colony Life Ins. Co., 593 P.2d 534 (Utah 1979):
[I]t is unfair for an insurer to collect a premium which purports to cover a period when in fact no such coverage exists: i.e., between the time of the application and the delivery of the policy. For this reason, we have approved the rule that ordinarily, when the insured has done everything required of him and paid his premium, the insurance takes effect from the time of the issuance of a binding receipt, even though the policy has not been delivered. [Citations omitted.] This is especially so when death or injury occurs from some cause unrelated to any possible ground for rejecting the application.
The difficulty which exists in cases such as the instant one is that prudence requires that an insurance company collect a premium as earnest money before it incurs the expenses of paying for a medical examination and processing the application and, if the company cannot impose such conditions as was done here, the result will be that persons such as Mr. Williams, who have special problems of age and health, would have to go through a very difficult process of obtaining insurance, if it could be done at all.
By the same measure of justice which decrees that it is unfair for an insurer to charge premiums which purport to cover a period when in fact no such coverage exists, the insurer should be accorded the protection of the plainly stated provisions of its contract as to the conditions prerequisite to its providing insurance coverage. In harmony with this, we have quoted with approval the proposition that:
... if, at the time of the application or medical examination, the insured was an insurable risk, the temporary contract of insurance is in force. If, however, the applicant at the time of the application or the medical examination was not an insurable risk, the company will not be liable under the ‘binding receipt.’ The rationale behind this holding is simply that the language of the receipt clearly expresses the intention of the parties. (Emphasis added.)
593 P.2d at 537; citing 29 Am.Jur.2d, Insurance, § 210; quoted in Prince v. Western Empire Life Ins. Co., 19 Utah 2d 174, 428 P.2d 163 (1967). This Court in Powell recognized the availability of this distinction as a method of resolving that case, but chose instead to base its holding in that particular case on the theory of unconscion-ability.
According to the above-cited language, when an insurability-type clause is used, *71 the focus is upon whether the applicant was an insurable risk at the time the application was submitted. It is clear that in this instance the insured did not demonstrate that he was, and unfortunately, was killed before he could do so. Donnie Blan-ton was required to undergo a medical examination, and the company made a good faith effort to inform him of that requirement as soon as it discovered that the information on the application was wrong. Under the plain terms of the application and receipt, no temporary binder of insurance could become effective until the required medical examination was completed. Therefore, since Donnie Blanton unfortunately was killed before he could meet the conditions precedent to temporary coverage, no coverage ever became effective.
For all of the above-stated reasons, the judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, FAULKNER, ALMON and EMBRY, JJ., concur.